RICHARD D. LAUER ET AL. *v.* ZONING COMMISSION OF THE TOWN OF REDDING ET AL.
(SC 15680)

Callahan, C. J., and Borden, Berdon, Norcott and McDonald, Js.

Argued October 30, 1997—officially released January 20, 1998*

*Nancy Burton*, for the appellant (named plaintiff).

*Michael N. LaVelle*, for the appellee (named defendant).

*Helen L. McGonigle*, for the appellees (defendant Luciano Angeloni et al.).

*Opinion*

NORCOTT, J. The certified issue in this appeal is: "Did the Appellate Court properly conclude that the trial court's judgment was untimely under General Statutes

---

* Superseded. See *Lauer* v. *Zoning Commission,* 246 Conn. 251, 716 A.2d 840 (1998).

§ 51-183b,[1] and that the untimeliness was not waived?"[2] *Lauer* v. *Zoning Commission*, 241 Conn. 902, 903, 693 A.2d 304 (1997). The named plaintiff,[3] Richard D. Lauer, took an administrative appeal from a decision by the named defendant, the zoning commission of the town of Redding (commission), granting a special permit to the defendant property owners, Luciano and Debra Angeloni. The trial court issued an order sustaining the appeal 119 days after the trial on the matter had been completed. Two weeks later, 143 days after the completion of the trial, the trial court issued an eighteen page memorandum of decision explaining the factual and legal basis for its previous order. The defendants appealed to the Appellate Court from that decision.[4] The

---

[1] General Statutes § 51-183b provides: "Judgments in civil actions. Time limit. Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

[2] In addition to the issue certified, the named plaintiff also petitioned for certification as to whether the Appellate Court improperly found the applicable zoning regulation to be directory rather than mandatory. We declined to review this issue.

[3] Janice Pomazi joined Richard Lauer in his appeal to the trial court. The trial court found, however, that Pomazi was not classically aggrieved because she did not have a specific personal and legal interest in the matter, which directly and adversely had been affected by the commission's decision. Therefore, she is not a party to this appeal. Hereafter, we refer to Lauer as the plaintiff.

[4] The defendants claimed: (1) that the judgment of the trial court had been rendered beyond the 120 day period set by statute and, therefore, should be vacated; and (2) that the trial court improperly construed as mandatory § 5.1.2 of the Redding zoning regulations, which required the commission to submit the special permit application to three town agencies. The Appellate Court reversed the judgment of the trial court because of its conclusion on the timeliness claim, and addressed the issue of whether the zoning regulation was mandatory rather than directory because that issue would arise on retrial.

The plaintiff sought certification to appeal to this court, and we granted certification to appeal limited to the timeliness of the judgment of the trial court. *Lauer* v. *Zoning Commission*, supra, 241 Conn. 903.

Appellate Court concluded that the trial court lacked jurisdiction because its judgment was rendered beyond the 120 day time limitation set forth in § 51-183b. *Lauer* v. *Zoning Commission*, 44 Conn. App. 542, 545, 690 A.2d 893 (1997). The Appellate Court reasoned that for purposes of § 51-183b, a judgment is not rendered until the trial court sets forth the legal and factual basis for its ultimate conclusions in accordance with Practice Book § 334A.[5] Id. We disagree and reverse the judgment of the Appellate Court.[6]

The facts and procedural history are set forth in the decision of the Appellate Court. "The Angelonis obtained a special permit in 1989 to operate a riding academy in a residential zone in Redding. The 1989 permit allowed the owners to board a maximum of twenty-five horses at the academy. On October 23, 1991, the owners applied to the commission to amend the special permit, seeking, inter alia, to increase the number of horses from twenty-five to forty. The commission

---

[5] Practice Book § 334A provides in relevant part: "Statement of Decision; When Required

"(a) Except in small claims actions and as provided in paragraph (b), (1) in judgments in trials to the court in civil and criminal matters, (2) in decisions on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in decisions upon motions to dismiss under Sec. 814, (4) in decisions on motions to suppress under Sec. 820, (5) in decisions granting motions to set aside a verdict under Sec. 319, and (6) in any other decisions which constitute a final judgment for purposes of appeal under Gen. Stat. § 52-263 but do not terminate the proceedings, the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the office of the clerk of the trial court. . . ."

[6] Because we reverse the judgment of the Appellate Court, which concluded that the judgment of the trial court was untimely, it is unnecessary to determine whether the defendants, by their actions, had waived the untimeliness of that judgment.

granted the special permit on January 22, 1992. The plaintiff appealed to the Superior Court from the granting of the special permit. On April 3, 1995, 119 days after the trial was completed, the trial court issued the following order: 'The administrative appeal is sustained. A memorandum will follow.' On April 10, 1995, the owners moved to set aside the order and for a mistrial, asserting that no judgment was rendered within the 120 day period set forth in General Statutes § 51-183b. The trial court did not rule on the motion, but, instead, issued its memorandum of decision 143 days after the completion of the trial." *Lauer* v. *Zoning Commission,* supra, 44 Conn. App. 543–44.

"In past cases interpreting § 51-183b and its predecessors, we have held that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it." *Waterman* v. *United Caribbean, Inc.,* 215 Conn. 688, 692, 577 A.2d 1047 (1990); *Whitaker* v. *Cannon Mills Co.,* 132 Conn. 434, 438, 45 A.2d 120 (1945); *Foley* v. *Douglas & Bro., Inc.,* 121 Conn. 377, 380, 185 A. 70 (1936). "A delay in decision beyond that authorized by the statute makes the decision voidable and, absent waiver, requires a new trial." *Frank* v. *Streeter,* 192 Conn. 601, 603, 472 A.2d 1281 (1984). In the present case, however, an order was issued within the mandatory 120 day period. Therefore, we must decide whether the order of the trial court satisfied the requirements of § 51-183b.

The ultimate issue is one of statutory construction. We must determine whether the order of the trial court constituted a "judgment" within the meaning of § 51-183b, or whether, as the Appellate Court concluded, a judgment is not rendered for purposes of § 51-183b unless and until the trial court explains the reasons for its ruling in accordance with Practice Book § 334A.

Our analysis is guided by well established principles of statutory construction. " 'Statutory construction is a question of law and therefore our review is plenary.' " *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996). We commence our analysis with settled principles of statutory construction designed to ascertain and give effect to the apparent intent of the legislature. " '[W]e look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, [and] to the legislative policy it was designed to implement . . . .' " *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We begin with the language of the statute. Section 51-183b provides in relevant part that "[a]ny judge of the Superior Court . . . shall render judgment not later than one hundred and twenty days from the completion date of the trial . . . ." The language of the statute does not give any specific direction as to what the court must do to "render judgment." Because the term "render judgment" is undefined and the language of the statute does not illuminate our inquiry, it is necessary to look to other sources for its definition.

" 'If a statute . . . does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary.' " *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997). A "rendition of judgment" is "effected when [the] trial court in open court declares the decision of the law upon the matters at issue . . . ." Black's Law Dictionary (6th Ed. 1990). Furthermore, a "judgment" is the "final decision of the court resolving the dispute and determining the rights and obligations of the parties. . . ." Id. The plaintiff argues that the order of the trial court meets these requirements because the decree resolved the dispute and determined the appeal in his favor. We agree.

Our conclusion is further supported by the legislative purpose of § 51-183b. Section 51-183b was amended "in order to reduce delay and its attendant costs, [and] imposes time limits on the power of a trial judge to render judgment in a civil case. The origin of the section may be traced to chapter 3 of the Public Acts of 1879. *Spelke* v. *Shaw*, 117 Conn. 639, 643, 169 A. 787 (1933)." *Waterman* v. *United Caribbean, Inc.*, supra, 215 Conn. 691. The 1981 amendment to § 51-183b shortened the time period allowed for judges to render judgment from eight months to 120 days from the completion of the trial. See Public Acts 1981, No. 81-52.

The general purpose of § 51-183b, therefore, is to reduce delay in the trial courts. This purpose would be frustrated by the requirement that a memorandum of decision be issued within 120 days after completion of trial, a requirement beyond those enumerated by the rules of practice. Moreover, it would appear to be unnecessary first, because a memorandum of decision is most helpful when a case is appealed, many cases are never appealed. Second, the demand for a memorandum of decision in all cases where judgment is rendered, beyond what is required by the rules of practice, would further tax the already overburdened trial courts. A trial judge would feel compelled to deliver a memorandum of decision in all cases, even those cases in which an elaborate explanation is not warranted because of the simplicity of the issues, or for other reasons, which could delay other memoranda that truly need to be written. Third, the threat of overloading the docket with new trials, because the trial court had lost jurisdiction over the parties when a judgment had been rendered but when a memorandum of decision had not been issued, would also frustrate the utility of the statute. The purpose of the statute, therefore, would be hampered by the Appellate Court's decision.

Although we recognize the concern of the Appellate Court, that appellate rights might be compromised, we note that there are provisions in the appellate procedure section of the rules of practice that ameliorate this concern. For example, an appellant may file a motion for an extension of time to appeal pursuant to Practice Book § 4040,[7] a motion for articulation or for rectification pursuant to Practice Book § 4051,[8] or a motion to compel the trial judge to file a memorandum of decision under Practice Book § 4059.[9] Therefore, we believe

---

[7] Practice Book § 4040 provides in relevant part: "Extension of Time

"(a) Except as otherwise provided in these rules, the judge who tried the case may, for good cause shown, extend the time limit provided for filing the appeal, except that such extension shall be of no effect if the time within which the appeal must be taken is set by statute and is a time limit that the legislature intended as a limit on the subject matter jurisdiction of the court to which the appeal is taken. In no event shall the trial judge extend the time for filing the appeal to a date which is more than twenty days from the expiration date of the appeal period. . . ."

[8] Practice Book § 4051 provides in relevant part: "Motion for Rectification; Motion for Articulation . . .

"The trial court may make such corrections or additions as are necessary for the proper presentation of the issues raised or for the proper presentation of questions reserved. The trial judge shall file the decision on the motion with the appellate clerk. . . ."

[9] Practice Book § 4059 provides in relevant part: "[Decision by the Trial Court]—How Stated

"(a) Except in small claims actions and as provided in Sec. 4060, (1) in judgments in trials to the court in civil and criminal matters, (2) in decisions on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in decisions upon motions to dismiss under Sec. 814, (4) in decisions on motions to suppress under Sec. 820, and (5) in decisions granting a motion to set aside a verdict under Sec. 320, and (6) in any other decisions which constitute a final judgment for purposes of appeal under Sec. 4000, but do not terminate the proceedings, the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office.

"(b) If the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision in any case covered by paragraph (a), the appellant may file with the appellate clerk a notice that the decision has

there are sufficient safeguards to protect the rights of potential appellants if this situation should reoccur.

Notwithstanding, the defendants assert that the Appellate Court correctly concluded that the term "judgment" as used in § 51-183b is informed by Practice Book § 334A. We decline to read § 334A into the statute to define the term "render judgment," because the purpose, text and history behind § 334A demonstrate that it performs a different function than that performed by § 51-183b.

The overall purpose of Practice Book § 334A is to instruct the trial court to issue a memorandum of decision to aid the appellate process in those cases in which the judgment is likely to be appealed. This is evidenced by a nearly identical provision in Practice Book § 4059. A memorandum of decision becomes imperative when an appeal is taken because it provides the litigants and the appellate court with the basis of the trial court's underlying reasoning for its decision.

Furthermore, Practice Book § 334A (a) makes a textual distinction between judgments and decisions; it refers separately to judgments in subdivision (1), and to decisions in subdivisions (2), (3), (4), (5) and (6). See footnote 5. The trial court's judgment is that reflected in the judgment file, and does not usually include all of the details incorporated into a memorandum of decision. Therefore, the judgment is not necessarily always the same document as the court's memorandum of decision.

Practice Book § 334A, although adopted only in 1994, is a consequence of Practice Book § 4059, its appellate counterpart. Section 4059 was adopted in 1979, when the memorandum of decision replaced the required

not been filed in compliance with paragraph (a). . . . The appellate clerk shall promptly notify the trial judge of the filing of the appeal and the notice. The trial court shall thereafter comply with paragraph (a)."

finding. Prior to 1979, the memorandum of decision was relatively unimportant, and instead an elaborate and complicated system of findings was used to provide a mechanism for appellate review. W. Horton, "The Connecticut Supreme Court—On Becoming Supreme Again," 52 Conn. B.J. 45, 51 (1978). The process for findings of facts included requests for findings, proposed draft findings, counterfindings, findings, motions to correct the findings, and the bill of exceptions. Id. This system had been in effect since 1830. See *State v. Rios*, 30 Conn. App. 712, 716, 622 A.2d 618 (1993) (*O'Connell, J.*, concurring); M. Tyler, "The Findings of Facts in Connecticut," 4 Conn. B.J. 265, 265–67 (1930). This system often caused the trial judge to pore over the transcripts months or years after the trial, causing lengthy delays for taking an appeal. W. Horton, supra, 51.

In 1979, with the adoption of Practice Book § 3060B (now § 4059), the trial judge, if an appeal was taken, was required to state the basis for its decision orally or in a written memorandum of decision. The memorandum of decision, which incorporated all of the factual and legal predicates for the trial court's decision, supplanted the finding system, expediting appellate review.

Today, the rules of practice still contain separate rules directing the preparation of a judgment file, which evidences the fact that the memorandum of decision is not necessarily the same as the judgment of the trial court. See Practice Book §§ 335 through 338. Furthermore, prior to 1979, the judgment provisions were substantially similar to those of today, but the rules on findings were considerably more detailed and no mention was made of the requirement of a memorandum of decision. See Practice Book, 1963, §§ 260 through 266. Accordingly, it is clear that Practice Book § 334A performs a different function and purpose than that of

§ 51-183b and should not be read into the statute to define the term "render judgment."

Although we encourage trial courts to issue memoranda of decision, at the time of rendering judgment, we recognize that under certain circumstances it is permissible to render a judgment and thereafter issue a memorandum of decision. We urge trial courts, however, to be mindful of § 51-183b, and to render judgments accompanied by a memorandum of decision within 120 days after completion of trial.

We decline to review the second issue reached by the Appellate Court, to which we did not grant certification, namely, whether the zoning regulation at issue was directory or mandatory, and consequently we express no opinion as to that issue.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.