# RICHARD D. LAUER ET AL. *v.* ZONING COMMISSION OF THE TOWN OF REDDING ET AL.
## (SC 15680)

Callahan, C. J., and Borden, Berdon, Norcott and Palmer, Js.[1]

Argued May 27—officially released August 11, 1998

[1] The panel in the case was originally composed of Chief Justice Callahan and Justices Borden, Berdon, Norcott and McDonald. After oral argument, Justice McDonald recused himself from this appeal. Justice Palmer was then added to the panel, and he participated in the decision after reviewing the briefs and listening to the tape recording of the oral argument.

*Nancy Burton,* filed a brief for the appellant (named plaintiff).

*Michael N. LaVelle,* for the appellee (named defendant).

*Helen L. McGonigle,* for the appellees (defendant Luciano Angeloni et al.).

*Opinion*

NORCOTT, J. The original certified issue in this appeal was: "Did the Appellate Court properly conclude that the trial court's judgment was untimely under General Statutes § 51-183b,[2] and that the untimeliness was not waived?" *Lauer* v. *Zoning Commission,* 241 Conn. 902, 903, 693 A.2d 304 (1997). After this court published

---

[2] General Statutes § 51-183b provides: "Judgments in civil actions. Time limit. Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

a written decision resolving that issue; see *Lauer* v. *Zoning Commission*, 243 Conn. 485, 705 A.2d 195 (1998); the defendants filed a joint motion to reconsider and to correct the rescript. That motion was granted and, at the same time, this court, sua sponte, expanded the order granting certification to include the issue of whether the Appellate Court correctly concluded that § 5.1.2 of the Redding zoning regulations was directory rather than mandatory.[3] This court also ordered the parties to file supplemental briefs on the issue of whether § 5.1.2 is directory or mandatory and to appear for oral argument on that issue.[4]

The following procedural history is relevant to the issues raised. The named plaintiff,[5] Richard D. Lauer, took an appeal from a decision by the named defendant, the zoning commission of the town of Redding (commission), granting a special permit to the defendant property owners, Luciano and Debra Angeloni. The trial court issued an order sustaining the appeal 119 days after the trial on the matter had been completed. Thereafter, 143 days after the completion of the trial, the trial court issued an eighteen page memorandum of decision explaining the factual and legal bases for its previous order, namely, that the court had sustained the appeal because the commission had failed to comply with the notice provisions of § 5.1.2, which the trial court concluded were mandatory rather than directory.

[3] This decision supersedes *Lauer* v. *Zoning Commission*, supra, 243 Conn. 485, in its entirety.

[4] Although both parties filed supplemental briefs, only the defendants appeared for oral argument. We proceeded to hear argument from the defendants and treated the failure of the plaintiff to appear as a waiver of the opportunity to present oral argument.

[5] Janice Pomazi joined Richard Lauer in his appeal to the trial court. The trial court found, however, that Pomazi was not classically aggrieved because she did not have a specific personal and legal interest in the matter, which directly and adversely had been affected by the decision of the zoning commission of the town of Redding. Therefore, she is not a party to this appeal. Hereafter, we refer to Lauer as the plaintiff.

The defendants appealed to the Appellate Court from that decision claiming that: (1) the judgment of the trial court had been rendered beyond the 120 day period set by statute and, therefore, should be vacated; and (2) the trial court improperly had construed as mandatory § 5.1.2 of the Redding zoning regulations, which instructed the commission to submit the special permit application to certain town agencies. The Appellate Court reversed the judgment of the trial court concluding that, for purposes of § 51-183b, judgment is not rendered until a written memorandum setting forth the legal and factual bases for its ultimate conclusion is issued in accordance with Practice Book § 334A,[6] now Practice Book (1998 Rev.) § 6-1, and, therefore, judgment in this case was rendered beyond the 120 day time limitation of § 51-183b. *Lauer* v. *Zoning Commission*, 44 Conn. App. 542, 545, 690 A.2d 893 (1997). Because it would arise on retrial, the Appellate Court also addressed the issue of whether the zoning regulation was mandatory rather than directory and concluded that it was directory. Id., 546–47. We now consider both of those issues.[7]

---

[6] Practice Book § 334A, now Practice Book (1998 Rev.) § 6-1, provides in relevant part: "Statement of Decision; When Required

"(a) Except in small claims actions and as provided in paragraph (b), (1) in judgments in trials to the court in civil and criminal matters, (2) in decisions on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in decisions upon motions to dismiss under Sec. 814, (4) in decisions on motions to suppress under Sec. 820, (5) in decisions granting motions to set aside a verdict under Sec. 319, and (6) in any other decisions which constitute a final judgment for purposes of appeal under Gen. Stat. § 52-263 but do not terminate the proceedings, the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the office of the clerk of the trial court. . . ."

[7] Because we reverse the judgment of the Appellate Court, which concluded that the judgment of the trial court was untimely, it is unnecessary

I

The facts and procedural history relevant to the timeliness issue are set forth in the decision of the Appellate Court. "The Angelonis obtained a special permit in 1989 to operate a riding academy in a residential zone in Redding. The 1989 permit allowed the owners to board a maximum of twenty-five horses at the academy. On October 23, 1991, the owners applied to the commission to amend the special permit, seeking, inter alia, to increase the number of horses from twenty-five to forty. The commission granted the special permit on January 22, 1992. The plaintiff appealed to the Superior Court from the granting of the special permit. On April 3, 1995, 119 days after the trial was completed, the trial court issued the following order: 'The administrative appeal is sustained. A memorandum will follow.' On April 10, 1995, the owners moved to set aside the order and for a mistrial, asserting that no judgment was rendered within the 120 day period set forth in . . . § 51-183b. The trial court did not rule on the motion, but, instead, issued its memorandum of decision 143 days after the completion of the trial." *Lauer* v. *Zoning Commission*, supra, 44 Conn. App. 543–44.

"In past cases interpreting § 51-183b and its predecessors, we have held that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it." *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 692, 577 A.2d 1047 (1990); *Whitaker* v. *Cannon Mills Co.*, 132 Conn. 434, 438, 45 A.2d 120 (1945); *Foley* v. *Douglas & Bro., Inc.*, 121 Conn. 377, 380, 185 A. 70 (1936). "A delay in decision beyond that authorized by the statute makes the decision voidable and, absent

to determine whether the defendants, by their actions, had waived the untimeliness of that judgment.

waiver, requires a new trial." *Frank* v. *Streeter*, 192 Conn. 601, 603, 472 A.2d 1281 (1984). In the present case, however, an order was issued within the mandatory 120 day period. Therefore, we must decide whether the order of the trial court satisfied the requirements of § 51-183b.

The ultimate issue is one of statutory construction. We must determine whether the order of the trial court constituted a "judgment" within the meaning of § 51-183b, or whether, as the Appellate Court concluded, a judgment is not rendered for purposes of § 51-183b unless and until the trial court explains the reasons for its ruling in accordance with Practice Book § 334A.

Our analysis is guided by well established principles of statutory construction. " 'Statutory construction is a question of law and therefore our review is plenary.' " *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996). We commence our analysis with settled principles of statutory construction designed to ascertain and give effect to the apparent intent of the legislature. " '[W]e look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, [and] to the legislative policy it was designed to implement . . . .' " *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We begin with the language of the statute. Section 51-183b provides in relevant part that "[a]ny judge of the Superior Court . . . shall render judgment not later than one hundred and twenty days from the completion date of the trial . . . ." The language of the statute does not give any specific direction as to what the court must do to "render judgment." Because the term "render judgment" is undefined and the language of the statute does not illuminate our inquiry, it is necessary to look to other sources for its definition.

" 'If a statute . . . does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary.' " *State* v. *Payne,* 240 Conn. 766, 771, 695 A.2d 525 (1997). A "rendition of judgment" is "effected when [the] trial court in open court declares the decision of the law upon the matters at issue . . . ." Black's Law Dictionary (6th Ed. 1990). Furthermore, a "judgment" is the "final decision of the court resolving the dispute and determining the rights and obligations of the parties. . . ." Id. The plaintiff argues that the order of the trial court meets these requirements because the decree resolved the dispute and determined the appeal in his favor. We agree.

Our conclusion is further supported by the legislative purpose of § 51-183b. Section 51-183b was amended "in order to reduce delay and its attendant costs, [and] imposes time limits on the power of a trial judge to render judgment in a civil case. The origin of the section may be traced to chapter 3 of the Public Acts of 1879. *Spelke* v. *Shaw,* 117 Conn. 639, 643, 169 A. 787 (1933)." *Waterman* v. *United Caribbean, Inc.,* supra, 215 Conn. 691. The 1981 amendment to § 51-183b shortened the time period allowed for judges to render judgment from eight months to 120 days from the completion of the trial. See Public Acts 1981, No. 81-52.

The general purpose of § 51-183b, therefore, is to reduce delay in the trial courts. This purpose would be frustrated by the requirement that a memorandum of decision be issued within 120 days after completion of trial, a requirement beyond those enumerated by the rules of practice. Moreover, it would appear to be unnecessary. First, a memorandum of decision is most helpful when a case is appealed, and many cases are never appealed. Second, the demand for a memorandum of decision in all cases where judgment is rendered, beyond what is required by the rules of practice, would

further tax the already overburdened trial courts. A trial judge would feel compelled to deliver a memorandum of decision in all cases, even those cases in which an elaborate explanation is not warranted because of the simplicity of the issues, or for other reasons, which could delay other memoranda that truly need to be written. Third, the threat of overloading the docket with new trials because the trial court had lost jurisdiction over the parties when a judgment had been rendered, but when a memorandum of decision had not been issued, would also frustrate the utility of the statute. The purpose of the statute, therefore, would be hampered by the Appellate Court's decision.

Although we recognize the concern of the Appellate Court, that appellate rights might be compromised, we note that there are provisions in the appellate procedure section of the rules of practice that ameliorate this concern. For example, an appellant may file a motion for an extension of time to appeal pursuant to Practice Book § 4040,[8] now Practice Book (1998 Rev.) § 66-1, a motion for articulation or for rectification pursuant to Practice Book § 4051,[9] now Practice Book (1998 Rev.) § 66-5, or a motion to compel the trial court to file a

---

[8] Practice Book § 4040, now Practice Book (1998 Rev.) § 66-1, provides in relevant part: "Extension of Time

"(a) Except as otherwise provided in these rules, the judge who tried the case may, for good cause shown, extend the time limit provided for filing the appeal, except that such extension shall be of no effect if the time within which the appeal must be taken is set by statute and is a time limit that the legislature intended as a limit on the subject matter jurisdiction of the court to which the appeal is taken. In no event shall the trial judge extend the time for filing the appeal to a date which is more than twenty days from the expiration date of the appeal period. . . ."

[9] Practice Book § 4051, now Practice Book (1998 Rev.) § 66-5, provides in relevant part: "Motion for Rectification; Motion for Articulation . . .

"The trial court may make such corrections or additions as are necessary for the proper presentation of the issues raised or for the proper presentation of questions reserved. The trial judge shall file the decision on the motion with the appellate clerk. . . ."

memorandum of decision pursuant to Practice Book § 4059,[10] now Practice Book (1998 Rev.) § 64-1. Therefore, we believe there are sufficient safeguards to protect the rights of potential appellants if this situation should reoccur.

Notwithstanding, the defendants assert that the Appellate Court correctly concluded that the term "judgment" as used in § 51-183b is informed by Practice Book § 334A. We decline to read § 334A into the statute to define the term "render judgment," because the purpose, text and history behind § 334A demonstrate that it performs a different function than that performed by § 51-183b.

The overall purpose of Practice Book § 334A is to instruct the trial court to issue a memorandum of decision to aid the appellate process in those cases in which the judgment is likely to be appealed. This is evidenced by a nearly identical provision in Practice Book § 4059.

---

[10] Practice Book § 4059, now Practice Book (1998 Rev.) § 64-1, provides in relevant part: "[Decision by the Trial Court]—How Stated

"(a) Except in small claims actions and as provided in Sec. 4060, (1) in judgments in trials to the court in civil and criminal matters, (2) in decisions on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in decisions upon motions to dismiss under Sec. 814, (4) in decisions on motions to suppress under Sec. 820, and (5) in decisions granting a motion to set aside a verdict under Sec. 320, and (6) in any other decisions which constitute a final judgment for purposes of appeal under Sec. 4000, but do not terminate the proceedings, the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office.

"(b) If the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision in any case covered by paragraph (a), the appellant may file with the appellate clerk a notice that the decision has not been filed in compliance with paragraph (a). . . . The appellate clerk shall promptly notify the trial judge of the filing of the appeal and the notice. The trial court shall thereafter comply with paragraph (a)."

A memorandum of decision becomes imperative when an appeal is taken because it provides the litigants and the appellate court with the basis of the trial court's underlying reasoning for its decision.

Furthermore, Practice Book § 334A (a) makes a textual distinction between judgments and decisions; it refers separately to judgments in subdivision (1), and to decisions in subdivisions (2), (3), (4), (5) and (6). See footnote 6 of this opinion. The trial court's judgment is that reflected in the judgment file, and does not usually include all of the details incorporated into a memorandum of decision. Therefore, the judgment is not necessarily always the same document as the court's memorandum of decision.

Practice Book § 334A, although adopted only in 1994, is a consequence of Practice Book § 4059, its appellate counterpart. Section 4059 was adopted in 1979, when the memorandum of decision replaced the required finding. Prior to 1979, the memorandum of decision was relatively unimportant, and instead an elaborate and complicated system of findings was used to provide a mechanism for appellate review. W. Horton, "The Connecticut Supreme Court—On Becoming Supreme Again," 52 Conn. B.J. 45, 51 (1978). The process for findings of facts included requests for findings, proposed draft findings, counterfindings, findings, motions to correct the findings, and the bill of exceptions. Id. This system had been in effect since 1830. See *State* v. *Rios*, 30 Conn. App. 712, 716, 622 A.2d 618 (1993) (*O'Connell, J.*, concurring); M. Tyler, "The Findings of Facts in Connecticut," 4 Conn. B.J. 265, 265–67 (1930). This system often caused the trial judge to pore over the transcripts months or years after the trial, causing lengthy delays in taking an appeal. W. Horton, supra, 51.

In 1979, with the adoption of Practice Book § 3060B, which became § 4059, the trial judge, if an appeal was

taken, was required to state the basis for its decision orally or in a written memorandum of decision. The memorandum of decision, which incorporated all of the factual and legal predicates for the trial court's decision, supplanted the finding system, expediting appellate review.

Today, the rules of practice still contain separate rules directing the preparation of a judgment file, which evidences the fact that the memorandum of decision is not necessarily the same as the judgment of the trial court. See Practice Book §§ 335 through 338, now Practice Book (1998 Rev.) §§ 6-2 through 6-4. Furthermore, prior to 1979, the judgment provisions were substantially similar to those of today, but the rules on findings were considerably more detailed and no mention was made of the requirement of a memorandum of decision. See Practice Book, 1963, §§ 260 through 266. Accordingly, it is clear that Practice Book § 334A performs a different function and purpose than that of § 51-183b and should not be read into the statute to define the term "render judgment."

Although we encourage trial courts to issue memoranda of decision at the time of rendering judgment, we recognize that under certain circumstances it is permissible to render a judgment and thereafter issue a memorandum of decision. We urge trial courts, however, to be mindful of § 51-183b, and to render judgments accompanied by a memorandum of decision within 120 days after completion of trial.

## II

We now turn to the plaintiff's claim that the Appellate Court improperly concluded that § 5.1.2 of the Redding zoning regulations was directory rather than mandatory. Section 5.1.2 provides in relevant part: "One copy of the application, including all maps, plans and reports,

shall be referred within 10 days of receipt, by the Commission, to the following Town agencies with a request for an advisory report: Board of Selectmen, Conservation Commission, Health Department, Planning Commission. Referral shall also be made to the appropriate regional, state or federal agencies where their jurisdiction is involved, and the Commission may require the applicant to furnish additional copies of application materials to meet these requirements. . . ." The plaintiff argues that the Appellate Court incorrectly reversed the trial court's determination that § 5.1.2 was mandatory and, therefore, that any action taken in the absence of timely notice to the appropriate agencies was without legal effect. We disagree.

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. . . . *Jones* v. *Mansfield Training School,* 220 Conn. 721, 727, 601 A.2d 507 (1992). A reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 225 Conn. 432, 440, 623 A.2d 1007 (1993)." (Internal quotation marks omitted.) *Katz* v. *Commissioner of Revenue Services,* 234 Conn. 614, 617, 662 A.2d 762 (1995).

Section 5.1.2 of the zoning regulations, which is entitled "Procedure"; see *Arrieu* v. *Litchfield*, 17 Conn. App. 320, 324, 552 A.2d 445 (1989) (placement in "procedure" section relevant to mandatory/directory determination); clearly pertains to order, system and dispatch rather than any matter of substance. The essence of the thing to be accomplished by § 5.1.2 and the related zoning regulations is the ultimate determination of whether the special permit should be issued under the applicable regulations, considering relevant factors such as: traffic concerns; safety from fire, panic, flood, erosion, air pollution, water pollution and other dangers; population density; conservation of property values; the provision of adequate light, air and privacy; and the adequate provision for transportation, water, schools, parks and other public requirements. See Redding Zoning Regs., §§ 2.1 through 2.11. The requirement of the provision in § 5.1.2 of timely notice to certain agencies is simply a matter of convenience designed to facilitate the information gathering and decision-making process, which is fully entrusted to the town zoning commission. See General Statutes § 8-3c (b). Section 5.1.2 places no obligation on the commission to wait for a report from any of the enumerated agencies before proceeding to consider the merits of a special permit application. Compare General Statutes § 8-3c (requiring local zoning commission to receive report from inland wetlands agency before issuing special permit in certain circumstances). Therefore, the notice requirement of § 5.1.2 cannot be said to affect the substance of the application, but rather only its processing.

Furthermore, as indicated in past cases, it is important to our determination that there is no accompanying language that expressly invalidates any action taken after noncompliance with § 5.1.2. See *Katz* v. *Commissioner of Revenue Services*, supra, 234 Conn. 617; *Leo Fedus & Sons Construction Co.* v. *Zoning*

*Board of Appeals,* supra, 225 Conn. 440; *Jones* v. *Mansfield Training School,* supra, 220 Conn. 727. The defendants appropriately contrast § 5.1.2 of the zoning regulations with General Statutes § 8-3c (a), which provides that if a special permit application "involves an activity regulated pursuant to [General Statutes §§] 22a-36 to 22a-45, inclusive, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations . . . ." Pursuant to § 8-3c (b), the "commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. . . ." By contrast, § 5.1.2 contains no language suggesting that any action taken without notice to, or input from, any agency will have any effect on the continuing validity of its decision on a special permit application. We conclude, therefore, that § 5.1.2 is directory rather than mandatory. See *Katz* v. *Commissioner of Revenue Services,* supra, 617; *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 440; *Jones* v. *Mansfield Training School,* supra, 727.

The judgment of the Appellate Court is reversed as to the timeliness of the trial court's judgment, the judgment of the Appellate Court is affirmed as to the directory nature of § 5.1.2 of the Redding zoning regulations, and the case is remanded to the Appellate Court with direction to remand the case to the trial court for purposes of considering the plaintiff's remaining claims.

In this opinion CALLAHAN, C. J., and BORDEN and PALMER, Js., concurred.

BERDON, J., concurring in part and dissenting in part. I agree with part I of the majority opinion regarding

the timeliness of the trial court's decision. Nevertheless, I disagree with part II of the opinion.

Section 5.1.2 of the Redding zoning regulations (regulations) provides that before the named defendant, the zoning commission of the town of Redding (commission), may establish, alter or enlarge a use subject to a special permit, "[o]ne copy of the application . . . *shall* be referred within 10 days of receipt, by the Commission, to the following Town agencies with a request for an advisory report: Board of Selectmen, Conservation Commission, Health Department, Planning Commission." (Emphasis added.) The majority holds that the word "shall" as used in this regulation is directory rather than mandatory and that, consequently, the commission in this case was not required to send a copy of the application for a special permit to the agencies specified in that section. In so concluding, the majority relies on the following principle of statutory construction: "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." (Internal quotation marks omitted.) *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995). Although I agree that the foregoing is a valid legal principle of statutory construction, I do not agree that it is applicable to the facts of this case.

What makes the latter principle inapplicable to the present case is the fact that the regulations at issue contain their own express instructions as to how the words employed in the regulations are to be interpreted. It is axiomatic that, before applying a rule of statutory construction, we first must look to the legislation itself—in this case the regulation—to determine whether the drafters expressly indicated the meaning to be assigned or the effect to be given to a particular provision of a regulation. "When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretative guidance." *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 310, 592 A.2d 953 (1991); *Stein* v. *Hillebrand*, 240 Conn. 35, 40, 688 A.2d 1317 (1997).

Article VIII of the regulations specifically provides that the "[w]ords and phrases used in these Regulations have the conventional meanings established by standard dictionaries, except as defined in the following sections." The sections that follow do not contain a definition of the word "shall." In accordance with the directive contained in the regulations, therefore, we must look to the common dictionary definition for the meaning of the word "shall" as used in § 5.1.2. The common dictionary definition of "shall" is "will have to: must . . . used to express a command or exhortation . . . used in laws, regulations, or directives to express what is mandatory . . . ." Webster's Third New International Dictionary. The result is that "shall" as used in § 5.1.2 is clearly mandatory.

Furthermore, the interpretation of shall as being mandatory is consistent with the obvious purpose of § 5.1.2. The purpose of the requirement that the agencies be given notice and an opportunity to comment is to assure that the commission has all the facts available to it

and that its decision be an informed one. Facilitating comment from the other agencies is of considerable importance because decisions of the commission have the potential to adversely affect our fragile environment, as the facts of this case demonstrate.

In this case, the special permit that was granted by the commission allows use of the property as a horse farm housing a maximum of forty horses. One of the bases on which the plaintiffs objected to the issuing of the special permit pertained to the disposal of manure and urine and the effect that disposal would have on a nearby stream and wetland system. A second concern pertained to the danger of increased contamination and pollution of surface and groundwaters relied on by the plaintiffs for domestic use. In response to the initial application for a special permit to operate a horse farm, two of the town's agencies had commented on the application and expressed concern about the environmental impact associated with granting the permit. The planning commission wrote a letter to the commission "stating its opinion that a horse farm is an appropriate use of land in Redding but that a 'more appropriate and less sensitive site should be chosen.' " The conservation commission wrote to the commission "stating its opinion that use of the land for a riding academy was 'not consistent with the mandate of the Conservation Commission to conserve and supervise [Redding's] natural resources including water resources, nor its original purpose in recommending that [the subject property] remain as one unsubdividable parcel for the protection of the site . . . .' " It is noteworthy that additional comment by these agencies as well as comment by the board of selectmen and the town health department would have been germane to the commission's decision on this application.

In light of the express provisions of the regulations themselves directing that all words be interpreted in

accordance with their conventional dictionary meanings, and the important purposes to be served by § 5.1.2 that support an interpretation that would make that section mandatory, I would affirm the well reasoned opinion of the trial court concluding that § 5.1.2 is mandatory rather than directory.

Accordingly, I dissent.