[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF APPEAL
The plaintiff, Alfred Hyde, appeals from a decision of the defendant Willington Planning Zoning Commission, in which the commission granted the defendant Village Springs Corporation's applications for a zone change and a special permit.
 BACKGROUND
On December 3, 1996, Village Springs filed two applications with the commission for approval of a zone change of approximately twenty-seven acres of land from a residential zone to a designed community residential (DCR) zone and for a special permit for the commercial recovery and bottling of spring water on the property. (Return of Record [ROR], Items A, B, D.) The property is located on Village street and Pinney Hill Road in Willington. (Appeal, ¶ 2; Answer ¶ 2.) The defendants Ace Equipment Sales, Inc. and Robert Cassells, Sr. were the owners of the subject property at the time the applications were filed. (ROR, Items A, B.) Defendant Patricia Cassells is the executrix of the estate of Robert Cassells, Sr., now deceased. (Citation.)
The commission held a public hearing on the application on January 21, 1997, February 4, 1997 and February 18, 1997.[1]
The hearing was closed on February 18, 1997. (ROR, Item KKK, p. 55.) The applications were discussed during the commission's meetings on March 4, 1997 and March 12, 1997, and were approved at the March 12, 1997 meeting. (ROR, Items BBBBB, CCCCC.) CT Page 10964
The commission acted pursuant to General Statutes §§ 8-3(b) and 8-3c(b). The plaintiff appealed pursuant to General Statutes § 8-8.
 FACTS
The subject property consists of approximately twenty-seven acres, approximately twenty-four of which are currently owned by the estate of Robert Cassells and the remaining approximately three acres, which are located in the middle of the Cassells property, are owned by Ace Equipment. (ROR, Item E, p. 4.) Ace Equipment was an applicant for the zone change application only. (ROR, Items III, p. 1; P.) When the applications were filed, the property was located in an R-80 residential zone. The property, consisting of four parcels, contains several multi-family residences, a single family residence and a spring water recovery and bottling operation being conducted pursuant to a special permit issued for a home occupation use in 1989. (ROR, Items A; F, p. 2.) Village Springs' application proposed the zone change to a DCR zone to allow for the recovery and bottling of spring water as a commercial operation instead of a home occupation. (ROR, Item A.) Plans submitted with the application consisted of building a driveway, storage tank and fifteen by forty foot addition to the bottling facility. (ROR, Item T.)
 JURISDICTION
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). "The plaintiff can demonstrate statutory aggrievement pursuant to [General Statutes] § 8-8(a)(1) if [he] can demonstrate that [his] property abuts or is within 100 feet of any portion of the land involved in the decision of the commission." (Internal quotation marks omitted.) McNally v. Zoning Commission, 225 Conn. 1, 6,621 A.2d 279 (1993). On the basis of the uncontested pleading and testimony of the plaintiff that he is the owner of property located within 100 feet of the subject property, the court finds that the plaintiff has established aggrievement.
Timeliness and Service of Process
CT Page 10965
General Statutes § 8-8(b), (e) and (f) requires that an administrative appeal be commenced within fifteen days from the date of the publication of the commission's decision by service of process on the chairman or clerk of the commission, the clerk of the municipality and other persons who petitioned the commission. "[A]n applicant who receives a favorable decision from a planning and zoning board of appeals is a necessary and indispensable party to an appeal by persons aggrieved by the decision. . . . " (Citation omitted.) J B Construction Contracting Services, Inc. v. Zoning Board of Appeals,45 Conn. App. 702, 705-06, 697 A.2d 721 (1997).
The commission's decision was published on March 27, 1997 in The Chronicle. (ROR, Item DDDDD, Affidavit of Publication.) On April 4, 1997, the plaintiff served the corporation secretary of defendant Ace Equipment Sales, Inc., the vice president of Village Springs Corp., Patricia Cassells, the chairman of the commission and the clerk of the town. (Sheriff's Return.)
The court finds this appeal was commenced in a timely fashion by service of process upon the proper parties.
 DISCUSSION
The plaintiff claims the commission's two decisions are illegal, arbitrary and in abuse of its discretion. The plaintiff argues in his brief that the zone change decision is in error because (1) the record does not indicate a copy of the proposed zone change was filed in the office of the town clerk at least ten days prior to the public hearing as required by General Statutes § 8-3 and (2) the commission acted without authority by approving an application that did not comply with the Zoning Regulations for the Town of Willington. (Regulations.) The plaintiff argues that the special permit decision is in error because (1) the requested use is not permitted in a DCR zone and (2) one parcel of the subject property was subject to a prior condition to remain as open space.
A. Copy of Proposed Zone Change on File
The plaintiff first challenges the validity of the zone change on the ground that there is no reference in the record that a copy of the proposed zone change was filed with the town clerk as required by General Statutes § 8-3. CT Page 10966
General Statutes § 8-3(a) provides in part: "[S]uch zoning commission shall provide for the manner in which regulations . . . shall be respectively established or changed. No such regulations or boundary shall become effective or be established or changed until after a public hearing. . . . [A] copy of such proposed regulation or boundary shall be filed in the office of the town . . . for public inspection at least ten days before such hearing. . . ." The notice requirements of General Statutes §§ 8-3(a) are mandatory, and are a prerequisite for subject matter jurisdiction by the commission.Timber Trails Corporation v. Planning and Zoning Commission,222 Conn. 374, 378, 610 A.2d 617 (1992). "The plaintiff had the burden of proof, in the sense of risk of nonpersuasion, that the proposed regulations had not been filed with the town clerk at least ten days before the hearing as required by § 8-3."Scovil v. Planning Zoning Commission, 155 Conn. 12, 17,230 A.2d 31 (1967).
Included in the return of record is a January 7, 1997 Legal Notice from the commission providing notice of the public hearing scheduled for January 21, 1997 and stating that details of the applications for a zone change and a special permit were on file for public review. (ROR, Item C.) "Insofar as this document [has] any probative force, it [tends] to support the presumption that the defendant, as a public body, had properly performed its duty and had acted in conformity with the requirements of law, including those of § 8-3." Scovil v. Planning ZoningCommission, supra, 155 Conn. 19.
In light of the legal notice filed in this court as part of the record and the failure of the plaintiff to establish that a copy of the regulations were not on file, the court presumes that the commission properly performed its duty and had a copy of the proposed regulations on file in the town clerk's office by January 7, 1997, more than ten days before the January 21, 1997 public hearing.
B. Commission Acted without Authority
The plaintiff claims the application failed to meet the mandatory requirements of three sections of the regulations and, therefore, the commission acted without authority in approving the application. The plaintiff claims the application failed to (1) explain how the proposed use conforms to the Comprehensive Plan as required by Section 12.03.02.03.07, (2) provide a CT Page 10967 statement explaining how each of the requirements set forth in the regulations were met as required by Section 12.03.02.03.08 and (3) address the adequacy of the disposal of sewerage effluence as required by Section 12.04.01.06.
"In construing regulations, the general rules of statutory construction apply." (Internal quotation marks omitted.) Smith v.Zoning Board of Appeals, 227 Conn. 71, 89, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540
(1994). "The test to be applied in determining whether a [regulation] is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the [regulatory] provision is mandatory. . . . If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a [regulatory] provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. . . . A reliable guide in determining whether a [regulatory] provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision." (Citations omitted; internal quotation marks omitted.) Lauer v. Zoning Commission,246 Conn. 251, 262, ___ A.2d ___ (1998).
The regulations state in part:
Section 12.03.02.03 General Statement. Applications for change of zone to any Designed Development Zone shall include a general statement describing the following: . . . .
12.03.02.03.07 A statement outlining how the proposed development conforms to the Comprehensive Plan embodied in these Regulations and the adopted Plan of Development of the Town; and how the proposal will better utilize the resources of the site to the benefit of the neighborhood and the Town than would be possible under the requirements of the underlying zone.
12.03.02.03.08 A statement outlining how each of the requirements set forth in these Regulations are met, and how each of the criteria for evaluation of the application are satisfied. CT Page 10968
 * * * *
12.04.01 General Standards and Requirements for All DesignedDevelopment Zones. In considering a petition for a Designed Development Zone, the Commission shall be guided by the following considerations. Where necessary, documentation by the petitioner shall be presented to the Commission when required so that the impact of the proposal on these considerations can be assessed.
12.04.01.06 The availability of water to the site and adequate disposal of sewerage effluent. The characteristics of the soil to accept the effluent in a safe and harmless manner, in the quantities proposed, shall be adequate. Sufficient water shall be available to the site to supply the needs of the proposed uses.
The essence of the thing to be accomplished by the regulations in this matter is for the commission to decide whether the zone should be changed from a residential zone to a DCR zone. Many sections of the regulations are applicable to this matter.
The three regulatory sections at issue here pertain to the procedure of information gathering rather than any matter of substance. First, Sections 12.03.02.03.07 and 12.03.02.03.08 are contained in the "Application Procedure for all Designed Development Zones" section of the regulations. See Lauer v.Zoning Commission, supra, 246 Conn. 263 (placement in procedure section relevant to mandatory/directory determination). Second, Section 12.04.01 states that information on sewerage effluence shall be provided, if deemed necessary by the commission. Third, none of the provisions contain language invalidating action taken on applications that fail to include such information. Instead, they all pertain to the dispatch of information for the convenience of the commission, not the substance of making the decision. Thus, the court finds the commission is not required by these regulations to refrain from considering the merits of an application lacking such information.
C. Permitted Use not Allowed in DCR Zone
The plaintiff argues that while the recovery and bottling of spring water is allowed by a special permit in a DCR zone, the use of tractor trailer trucks for the operation is beyond the contemplation of the permitted use. CT Page 10969
Regulation 5.07.02.22 allows the commission to permit the recovery and bottling of spring water in the DCR zone provided all regulations pertaining to DCR zones and special permits are met. (ROR, Item EEEEE.) After a discussion on a variety of issues, including those relating to traffic, the commission approved the special permit with fourteen conditions. These conditions include a limit of twenty tractor trailer truck trips per week and a restriction on the hours of operation from 7 a.m. to 10 p. m. to minimize the disturbing noise of truck traffic. (ROR, Item CCCCC, p. 14.) After the decision was made, Lee Dion, a commission member, stated that the special permit was approved because it met the criteria and intent of the regulations. (ROR, Item CCCCC, p. 14.)
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." Irwin v. Planning andZoning Commission, 244 Conn. 619, 627, ___ A.2d ___ (1998). When acting in an administrative capacity, a zoning commission's "function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the [existing] regulations and the statutes." (Internal quotation marks omitted.) Kaufman v. Zoning Commission, 232 Conn. 122, 150,653 A.2d 798 (1995). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. General Statutes § 8-2." (Internal quotation marks omitted.) Housatonic TerminalCorporation v. Planning Zoning Board, 168 Conn. 304, 307,362 A.2d 1375 (1975). "The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated. . . ." (Citation omitted; internal quotation marks omitted.) WhisperWind Development Corporation v. Planning Zoning Commission,32 Conn. App. 515, 519, 630 A.2d 108 (1993), aff'd, 229 Conn. 176,640 A.2d 100 (1994). CT Page 10970
"The . . . trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." Irwin v.Planning and Zoning Commission, supra, 244 Conn. 627-28. On appeal of an administrative decision, "[t]he agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v.Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40,525 A.2d 940 (1987). "The evidence, however, to support any such reason must be substantial. . . . " (Citation omitted.) Id., 540. "The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) Id., 541. The burden of proof is on the plaintiffs to demonstrate that the defendant acted improperly.Spero v. Zoning Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991).
There are no provisions in the regulations that prohibit the commission's granting of a special permit for the recovery and bottling of water in a DCR zone because of the presence of tractor trailer trucks. There are, however, special permit regulations pertaining to traffic and trucks. Section 13.03.09.02 allows the commission to obtain a traffic impact study by a Connecticut Registered Professional Engineer, if needed. Section 13.05.12.02 states that the commission must consider whether the proposed use is appropriate with regard to the capacity of adjacent and feeder streets to accommodate the traffic volume, any special traffic characteristics and the avoidance of non-residential traffic through residential streets. Section 13.05.14.01 states that the commission shall find that the vehicular traffic to and from the use will not be hazardous or inconvenient to an adjacent residential district or conflict with the traffic characteristics of the neighborhood. (ROR, Item EEEEE.)
The record indicates that while the commission members were considering the proposed use and the applicable regulations, they did consider the impact of the presence of tractor trailer trucks and possible increased traffic on the neighborhood. The traffic CT Page 10971 issues were raised at the public hearings by the members of the commission and the public. (ROR, Items E, pp. 12-14, 16-17; 26-30, 33; KKK, pp. 8-15, 21-24, 32, 36-40, 42-43.) Village Springs' engineers studied the traffic on Pinney Hill Road, the road on which the entrance to the bottling business was located. (ROR, Item OOO.) They reported to the commission a lack of congestion and a capacity for future traffic increases on the road. In addition, they reported on the safety of entering and exiting the driveway on the property and reported that with certain steps taken to improve sight distance, there will not be a safety problem. (ROR, Items JJJ, pp. 2-4; KKK, pp. 8-14.)
The court finds there was substantial evidence in the record to support a finding that the proposed use, as permitted, met the criteria of the regulations, such that the capacity of the adjacent streets could accommodate the type of and any increase in traffic generated by the use and that such traffic would not be hazardous or inconvenient to the adjacent residential neighborhood.
D. Open Space
The plaintiff's final argument is that the commission did not have the authority to grant a special permit for the recovery and bottling of water on Parcel 4, because that parcel of land was previously designated as open space for Parcel 3. Village Springs counters that the commission may modify an open space designation and did so during consideration of the zone change application. Village Springs also claims that the commission may consider the entire "development," including land previously dedicated, when deciding what land should be dedicated as open space.
Section 12.03.02.05 of the regulations states that all applications for a designed development zone shall be accompanied by a Preliminary site Development and Land Use Concept Plan (plan).
Section 5.07.03.07 of the regulations states:
Open Space and Recreation. All developments in the DCR Zone shall include a minimum of twenty-five (25%) percent of the land permanently dedicated and, if necessary, improved for open space and/or recreation. Of the total open space so dedicated, at least one thousand (1,000) square feet per dwelling unit shall be CT Page 10972 improved for active and passive recreational use by both adults and children. Such open space and recreation areas shall be in such areas, and improved in such a manner, as the Commission may require. . . . Such open space and recreation areas shall be dedicated by those methods, used and located to serve those purposes, and owned by those entities, as set forth in Section 10 (Open Space Subdivision) of these Regulations.
Section 10 provides the regulations pertaining to open space. Section 10.07.03 states:
Alteration of Open Space. Any excavation, filling, regrading or alteration of Open Space; any construction or expansion of any building, structure or other improvements thereon, or any paving or surfacing of Open Space subsequent to the date of approval of the Open Space Subdivision shall require an amendment to the Special Permit granted under this Section 10 in accordance with the applicable Sections of the Regulations.
Village Springs included a plan with its zone change application, designating twenty-five percent of the area as open space in the form of a conservation easement. (ROR, Items E, pp. 5-6; H; I; M; KKK, p. 47.)
The issue of open space was raised during the public hearings. During the February 18, 1997 meeting, Ralph Tulis, chairman, provided a history of the open space conditions that have been imposed on Parcel 4. He said that in 1977 the parcel was restricted to open space use for the benefit of Parcel 3. In 1983, the commission granted a modification of the open space restriction to allow one single-family home to be built. In 1989, the commission granted Robert Cassells a home occupation permit to bottle water. (ROR, Items JJJ, p. 5; KKK, pp. 19-20.) Village Springs' engineer testified that 6.75 acres would be set aside for open space. (ROR, Item KKK, p. 47.) The site plan included open space marked as a conservation easement. (ROR, Item G.)
At the March 12, 1997 meeting, after granting the zone change and before addressing the special permit, the commission turned to the plan submitted by the applicant. After a discussion, the commission approved the plan with several modifications, including an "[a]ddition of note regarding open space to comply with Section 5.07.03.07." (ROR, Item CCCCC, p. 10.)
The court finds that when the commission then addressed the CT Page 10973 special permit issue, the open space designation on Parcel 4 had been modified.
For all the foregoing reasons, the court dismisses the appeal.
Klaczak, J.