[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiffs, Andrew R. and Anna T. Pollansky, acting pro se, appeal the decision of the Coventry Planning and Zoning Commission (commission) to approve a special permit application for the defendants Barbara G. and Bruce Richard Halloran to operate a sand and gravel excavation business on their property. The facts pertinent to this appeal are as follows:
The Hallorans are the owners of a parcel of land which abuts the plaintiffs' property. (Complaint, ¶ 5; Return of Record for Appeal [ROR], Item 1: Pond Permit Plan). In 1989, the Hallorans applied for and received a special permit from the commission to operate a sand and gravel excavation business on their property. (ROR, Item 38: Transcript of March 9, 1998 Planning Zoning Commission Regular Meeting, p. 1). Pursuant to the requirements of the Coventry zoning regulations, the Hallorans renewed their special permit in 1991 and 1992. (ROR, Item 38, p. 1). In 1993, the Hollorans submitted another renewal application but subsequently withdrew it, claiming that facts they discovered regarding the prior use of the property allowed them to continue their excavation activities as a "grandfathered" use. (ROR, Item 38, p. 3.). The Hallorans also claimed that the issuance of a permit by the Coventry Inland Wetlands Agency for pond excavation obviated the need for a special permit. (ROR, Item 38, pp. 22-23). The commission disagreed with the Hallorans, and a zoning enforcement action against the Hallorans ensued, as well as a federal civil action brought by the Hallorans against the town, the commission and the abutting plaintiffs.
In 1997, the federal lawsuit was settled as between the Hallorans and the commission. Under the terms of the settlement, the Hallorans agreed to return to the commission to seek a CT Page 10588 special permit to continue their excavation activities. On December 31, 1997, the Hallorans filed their application for a special permit. (ROR, Item 2: Application for Special Permit). The application was sent to the various municipal agencies for review. (ROR, Items 4-9, 12, 14-15)
On March 9, 1998, the commission held a public hearing on the application. (ROR, Item 33: Minutes of Commission Meeting Held on March 9, 1998; ROR, Item 38). The commission heard discussion in favor of the application from Howard Wood, the Hallorans' attorney, and Bruce Richard Halloran, as well as discussion in opposition from Steven Pollansky, the plaintiffs' son. (ROR, Item 38). The commission also heard discussion from Michael Zizka, Town Attorney for the town of Coventry. (ROR, Item 38, pp. 39-41, 43, 44) Memoranda were submitted to the commission from the Inland Wetlands Agency, the Town Engineer and the Tolland County Soil and Water Conservation District, commenting on the application. (ROR, Item 14: Memorandum from Stephen Wallace, Wetlands and Soil Erosion and Sediment Control Officer, to Commission; ROR, Item 15: Memorandum from David Askew, District Manager of Tolland County Soil and Water Conservation District, to Commission; ROR, Item 33). After the close of the public hearing, the commission voted unammously to approve the special permit application, with conditions. (ROR, Item 38, pp. 47-48)
The plaintiffs allege that legal notice of the commission's decision was published in the Willimantic Chronicle on March 17, 1998. (Complaint, ¶ 4; ROR, Item 37: Legal Notice). On April 1, 1998, the plaintiffs filed this appeal.
 II A
General Statutes § 8-8 governs appeals taken from the decisions of the commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama. Inc.v. Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559
(1985)
"[P]leading and proof of aggrievement are Prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,
CT Page 10589237 Conn. 184, 192, 676 A.2d 831 (1996). Under General Statutes § 8-8
(a)(1) "aggrieved person" includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." "Abutting landowners or landowners within a radius of one hundred feet of the land involved in any decision of the zoning [commission] are considered automatically aggrieved and have standing to appeal a decision of" the commission. Smith v. Planning Zoning Board,203 Conn. 317, 321, 524 A.2d 1128 (1987). The plaintiffs have alleged that they own property which abuts the premises at issue. (Complaint, ¶ 5; see also ROR, Item 1). As abutting landowners, the plaintiffs have properly pleaded aggrievement and have standing to appeal the commission's decision pursuant to General Statutes § 8-8 (a)(1).
 B
General Statutes § 8-8 provides that an "appeal shall be commenced by service of process within fifteen days from the date that notice of the decision was published." General Statutes §8-8 (b); see also General Statutes § 8-26e (providing that notice of special permit decision is to be published within fifteen days after such decision is rendered). The plaintiffs allege that the commission published notice of its decision to approve the special permit application on March 17, 1998. Pursuant to General Statutes § 8-8 (e),[1] service was made on Ruth Benoit, Town Clerk of the town of Coventry, and Joann Terry, Vice Chairperson of the commission, on April 1, 1998. Accordingly, the court finds that the plaintiffs' appeal of the commission's approval of the special permit application was timely served on the proper parties.
 III
The plaintiffs appeal the decision of the commission on the grounds that the commission's action was illegal, arbitrary and in abuse of its discretion in that: (a) the commission allowed the applicants and their attorney to participate in discussion of the application after the public hearing was closed; (b) the town attorney may have improperly influenced the commission to approve the special permit in order to settle the pending federal action; and (c) the commission failed to demand the Hallorans to provide certain information required under the zoning regulations. See Complaint, ¶¶ 6.a.1 through 6.a.17. CT Page 10590
 A
The plaintiffs' trial brief, filed on October 16, 1998, repeats verbatim the first and second bases for the appeal as set out in the complaint, with no legal argument or discussion. See Brief of Plaintiffs, pp. 6-7. The plaintiffs cite one case in support of the first basis for the appeal, and cite to the transcript of the public hearing in support of the first and second bases, but provide no other legal authority. In addition, the plaintiffs repeat, nearly verbatim, the third basis for the appeal without any substantive discussion or citation to authority in support. See id., pp. 7-8.
While it is the "established policy [of the Connecticut courts] to allow great latitude to . . . litigant [5] who, either by choice or necessity, [represent themselves] in legal proceedings"; Bitonti v. Tucker, 162 Conn. 626, 627,295 A.2d 545, cert. denied, 409 U.S. 351, 93 S.Ct. 62, 34 L.Ed.2d 94
(1972); "the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." Zanoni v. Hudon, 42 Conn. App. 70, 77,678 A.2d 12 (1996). The plaintiffs cite no cases, statutes, rules or any other legal authority in support of their second basis for the appeal. Moreover, the plaintiffs make no legal argument in support of their second basis. It is well established that the court is "not required to review issues that have been improperly presented . . . through an inadequate brief." ConnecticutNational Bank v. Giacomi, 242 Conn. 17, 44-45, 699 A.2d 101
(1997). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) Cummings v. Twin Tool ManufacturingCo., 40 Conn. App. 36, 45, 668 A.2d 1346 (1996); see alsoRodriouez v. Mallory Battery Co., 188 Conn. 145, 149,448 A.2d 829 (1982) ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by [the] court") Blakeney v.Commissioner of Correction, 47 Conn. App. 568, 585-86,706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998) (refusing to review pro se defendant's claims of error as abandoned CT Page 10591 Hbecause of inadequate briefing); Duve v. Duve,25 Conn. App. 262, 264, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332
(1991), cert. denied, 502 U.S. 1114, 112 S.Ct. 1224,117 L.Ed.2d 469 (1992) (refusing to review pro se plaintiff's claim of error as abandoned due to absence of factual development or legal support in brief).
The plaintiffs' brief is devoid of any argument, discussion or citation to legal authority in support of the vague and conclusory claim that the town attorney may have improperly influenced the commission to approve the special permit in order to settle the pending federal action. Accordingly, the plaintiffs' second basis for the appeal is deemed abandoned.[2]
The first and third bases for the appeal similarly include no substantive discussion or analysis in the trial brief, provide no pertinent authority in support, and constitute mere abstract and conclusory assertions of error. Thus, the court could consider the issues abandoned. However, in the interest of extending the pro se plaintiffs every benefit, even if the court analyzes the remaining claims raised in the complaint and the trial brief under the pertinent law, it is evident that neither of the remaining assertions of error constitute conduct that is illegal, arbitrary or an abuse of discretion.
 B
"Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably." (Internal quotation marks omitted.) Raczkowski v. Zoning Commission, 53.Conn., App. 636, 639, ___ A.2d ___ (1999) "[A] party challenging the action of a planning and zoning commission bears the burden of proving that the commission acted arbitrarily or illegally." Blaker v.Planning Zoning Commission, 212 Conn. 471, 478, 562 A.2d 1093
(1989)
General Statutes § 8-26e provides in relevant part that [w]henever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision." General Statutes § 8-26e. "In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they CT Page 10592 are pertinent to the considerations which the commission is required to apply under the zoning regulations." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission,244 Conn. 619, 629, 711 A.2d 675 (1998). Where the zoning commission "does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the [commission's] decision." Bloom v. Zoning Board of Appeals,233 Conn. 198, 208, 658 A.2d 559 (1995). In its notice of decision the commission provided no reasons for approval of the Hallorans' special permit. (ROR, Item 37). Accordingly, the court must search the record for an adequate basis for the commission's decision.
 1
The plaintiffs claim that the commission allowed the applicants and their attorney to participate in discussion of the application after the public hearing was closed. A review of the record, including portions of the transcript of the public hearing cited by the plaintiffs, indicates, however, that the public hearing had not been closed.
Subsequent to the plaintiffs' rebuttal to the applicants' presentation in support of the application, including substantial discussion of the their specific concerns among those in attendance, the commission Vice Chairperson, Joann Terry, inquired as to whether anyone else in the audience wished to comment on the application. (ROR, Item 38, p. 32). The plaintiffs were given the opportunity to further discuss their concerns regarding the application. (ROR, Item 38, pp. 32-33). At the conclusion of this discussion, the Vice Chairperson again asked if anyone from the audience wished to comment on the application. (ROR, Item 38, p. 33). Apparently after no response, one of the commission members asked the applicants about the height of the ground water table. (ROR, Item 38, p. 33). Thereafter, the Vice Chairperson suggested to close "the audience portion of [the] meeting." (ROR, Item 38, p. 35). However, Eric Trott, the Director of Planning and Development of the town of Coventry, raised the issue of whether enough information had been provided on the application since it was his understanding that once the hearing was closed no more information could be presented. (ROR, Item 38, p. 35). Trott was specifically concerned with additional information and discussion relating to the suggested conditions of the application. In response, Vice Chairperson Terry stated: "OK to continue the hearing the only thing . . . we would be CT Page 10593 looking then for . . . is more information from the applicants. . . ." (ROR, Item 38, p. 35). Discussion of the application continued among the commission members. (ROR, Item 38, pp. 35-37). At one point, Wayne Post, one of the members of the commission, stated that "most of the things that you've addressed . . . can be conditions, . . . rather than keeping . . . the public hearing opened, making conditions of approval's (ROR, Item 38, p. 37). The Vice Chairperson then asked the commission again: "Want to close the hearing, do you wish to get more information?" (ROR, Item 38, p. 37). Post stated "I'd like to see some more information" from the applicant's engineer. (ROR, Item 38, p. 37). Discussion then continued, including some participation by the applicants' attorney and by Bruce Richard Halloran. (ROR, Item 38, pp. 37-45). Later, Steven Pollansky, apparently wishing to comment, asked whether public participation in the hearing was closed. (ROR, Item 38, p. 45). Vice Chairperson Terry responded that it was, and that he could not speak. (ROR, Item 38, p. 45). Upon further discussion of the conditions, the Vice Chairperson closed the hearing and the commission proceeded to vote on the application. (ROR, Item 38, p. 47).
Even assuming, arguendo, that the cited portions of the transcript indicate that the "public" portion of the hearing was closed upon the Vice Chairperson's first suggestion, the hearing itself remained open until it was closed by the Vice Chairperson immediately prior to the vote. While it is clear that "[a]n administrative agency should not consider evidence submitted after the public hearing is closed without giving opponents an opportunity to inspect and question it and offer evidence in rebuttal" because such receipt of evidence may be illegal and can invalidate the commission's action; R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 47.4, p. 764; see Pizzola v. Planning Zoning Commission, 167 Conn. 202, 207,355 A.2d 21 (1974); the plaintiffs have directed the court to no authority establishing that the closing of the "public" portion of a hearing precludes the commission from engaging in further discussion of the application with the applicants for the purpose of ensuring that the application and any conditions imposed thereon complies with the zoning regulations.[3] In fact, the court's research reveals that after the opponent of a special permit application has been heard, the proponent can make a rebuttal, or the agency can ask questions of the parties, but the agency is not required to hear surrebuttal or additional comments of the opponent. R. Fuller, supra, § 20.10, p. 358. It appears in CT Page 10594 the present case that the commission even went beyond its requirements in allowing the plaintiffs the opportunity to discuss their concerns regarding the application after their original rebuttal. (ROR, Item 38, pp. 32-33)
In addition, even if the Hallorans or their attorney engaged in any discussion of the application after the "public" portion of the hearing was closed, the plaintiffs, in failing to provide any substantive analysis of their claim in the trial brief, have failed to demonstrate how this discussion prejudiced their cause in any way. Accordingly, the plaintiffs' claim of improper discussion after the close of the public hearing has not been established and cannot prevail. Connecticut Natural Gas Corp. v.Public Utilities Control Authority, 183 Conn. 128, 139,439 A.2d 282 (1981) ("use of improper evidence requires remand only if a party has affirmatively shown substantial prejudice")
The plaintiffs have failed to meet their burden to demonstrate that the commission acted illegally, arbitrarily or in abuse of its discretion in allowing the applicants and their attorney to participate in discussion of the application at the public hearing. See Blaker v. Planning Zoning Commission,
supra, 212 Conn. 478 (plaintiff in zoning appeal bears the burden of proving that the commission acted arbitrarily or illegally). Accordingly, the plaintiffs' appeal on this basis cannot be sustained.
 2
The plaintiffs also claim that the commission failed to demand the Hallorans to provide certain information required under the Coventry zoning regulations, specifically §§ 3.13.1, 3.13.4.a.3, 3.13.4.a.6, 3.13.4.b, 3.13.4.i, 3.13.5, 3.13.6, 3.13.7, 3.13.10, 3.13.11, 3.13.12, 3.22.2.k, 3.23, 4.2.B.1 and 4.2.E. Therefore, the plaintiffs claim that the commission acted illegally, arbitrarily or in abuse of discretion in granting the special permit.
"A special permit allows the property owner to use his property in a manner expressly permitted by the local zoning regulations." (Internal quotation marks omitted.) Raczkowski v.Zoning Commission, supra, 53 Conn. App. 639. "The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their CT Page 10595 precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site." Whisper Wind DevelopmentCorp. v. Planning Zoning Commission, 32 Conn. App. 515, 519,630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994), quoting T. Tondro, Connecticut Land Use Regulation (2d Ed.), p. 175.
"When ruling upon an application for a special permit, a planning and zoning [commission] acts in an administrative capacity." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 627-28. "Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." (Internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 639. "The proposed use . . . must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Internal quotation marks omitted.) Id. "It is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v.Planning Zoning Commission, 46 Conn. App. 563, 569,699 A.2d 314, cert. denied, 243 Conn. 936, 702 A.2d 640 (1997)
The plaintiffs have taken a "shotgun approach" to this appeal, claiming that the commission granted the special permit in violation of fifteen separate sections of the zoning regulations. Such an approach, especially combined with the added infirmity of a failure to brief the claims, forecloses the court's ability to analyze, much less decide, the plaintiffs' claims under several of the provisions invoked.
For example, the plaintiffs claim a violation of §§ 3.13.1, 3.13.7 and 3.23 of the Coventry zoning regulations. Section 3.13.1, entitled "Purpose," furnishes the general statement of the purpose for the regulations concerning excavation and filling of earth products, and provides that "[t]he purpose of these Regulations is to regulate the filling, processing and removal from land of earth, sand, stone, gravel, soil, minerals, loam, CT Page 10596 fill, clay, peat moss, and other similar substances, so as to prevent conditions in the Town of Coventry detrimental to the public safety, health, and general welfare, including, but not limited to, erosion, depletion of natural resources, dangerous open pits, lowering of property values, stagnant water bodies, nuisances, traffic hazards, and unsightly operations." Section 3.13.7 includes the general criteria that the commission must consider in making its decision on the special permit application. Section 3.13.7 provides that "[i]n passing on such applications, the commission shall consider:
a. The effect of such removal of filling on the surrounding property and the future usefulness of the premises when the operation is completed.
b. The traffic and safety impacts of the haul pattern.
c. The impact of noise, dust, erosion, blasting, and other proposed activities on residential uses in the neighborhood.
d. The environmental impact of the use, including impacts on ground- and surface-water quality and quantity, wildlife habitat, aquifer protection, and similar considerations.
e. Compliance with the Performance Standards of Section 3.16 of these Regulations.
f. The visual impact of the use both during and following the excavation or fill operation.
The Commission may approve, modify and approve, or disapprove such Special Permit application, and may impose such conditions and limitations on such Permit as may be required to insure compliance with the purposes of this Section." Section 3.23 is a general section of the Coventry zoning regulations governing stormwater runoff control. The language of § 3.23 itself states that "[f]or any use of land for which review is required by the Commission, the provisions of this Section . . . shall apply . . ." Section 3.23 provides four separate subsections, each containing numerous subdivisions consisting of specific considerations and requirements.
The plaintiffs fail to indicate which portions of these sections of the zoning regulations apply to their claims on appeal, and fail to address how the commission, in granting the CT Page 10597 special permit, violated these provisions. The plaintiffs merely claim in a vague and conclusory manner that these sections of the zoning regulations have been violated. It is not the court's function to ascertain and develop on behalf of the plaintiffs the conceivable bases for claims under such broad and comprehensive zoning provisions. Absent some formulation of an argument in support of claims under the regulations, it is impossible for the court to discern how the commission could have acted illegally, arbitrarily or in abuse of its discretion in failing "to demand the applicant to provide the . . . information" required in §§ 3.13.1, 3.13.7 and 3.23. Indeed, §§ 3.13.1 and 3.13.7 do not even require the submission of information by the applicant; they merely designate generally what the commission should consider in passing upon the special permit. Without some guidance by the plaintiffs, the court cannot conclude as a matter of law that the commission failed to comply with requisite considerations under these provisions of the zoning regulations, especially because it is the plaintiffs' arduous burden to prove that the commission acted illegally, arbitrarily or in abuse of its discretion. Accordingly, the plaintiffs reliance on §§ 3.13.1, 3.13.7 and 3.23 is unavailing.
The plaintiffs also claim a violation of §§ 3.13.11, 3.13.12, 4.2.B.1 and 4.2.E of the Coventry zoning regulations. These provisions, however, simply provide no bases for a claim that the commission acted illegally, arbitrarily or in abuse of discretion in failing to demand the applicants to submit information in support of the application. Section 3.13.11 provides that nothing in the regulations "shall prevent filing a revised plan with the Commission, modifying or reducing the scope of work originally approved, provided that the bond required in Section 3.13.10 shall not be released until all required provisions of these Regulations have been met, and provided further that any expansion or extension of the operation shall require a public hearing prior to approval." Section 3.13.12 states that "[t]he applicant shall be subject to all applicable municipal and State Regulations, including any Inland Wetlands Permit which may be required." Section 4 of the Coventry zoning regulations provides the general provisions for a "Special Permit/Exception." The regulations for special permits for excavation and filling of earth products are found in § 3.13 of the Coventry zoning regulations, and § 3.13.4 specifically provides that a special permit for removal of soil, sand or gravel may be granted under § 3.13 "in lieu of the provisions of Section 4 (Special Permit/Exception) of these Regulations." (Emphasis added.) Coventry Zoning Regs., CT Page 10598 § 3.13.4.
Sections 3.13.11 and 3.13.12 of the Coventry zoning regulations simply provide no grounds for a claim that the commission improperly granted the special permit because they do not constitute provisions which must be affirmatively met by either the applicants or the commission on an application for a special permit. The plaintiffs fail to identify how these provisions are pertinent to the present appeal, or how any conceivable violation of such provisions invalidates the commission's action on a special permit application. Moreover, §§ 4.2.B.1 and 4.2.E are plainly inapplicable to the plaintiffs' appeal since the commission acts under § 3.13 of the Coventry zoning regulations for special permits for excavation, in lieu of § 4 of the regulations. Accordingly, these provisions provide no bases for a claim of error.
The plaintiffs additionally claim a violation of §§ 3.13.4.a.3, 3.13.4.a.6, 3.13.4.b, 3.13.4.i, 3.13.5, 3.13.6, 3.13.10 and 3.22.2.k of the Coventry zoning regulations. These provisions provide certain conditions for special permit applications to conduct excavation.
Sections 3.13.4.a.3, 3.13.4.a.6 and 3.13.4.i provide in pertinent part that "[t] he Commission may grant a Special Permit under the following conditions:
a. The owner of the land . . . shall submit a plan prepared by an engineer and a land surveyor . . . which shall:
 * * *
3. Indicate existing contour lines and proposed final contour lines of the project area, as well as all area within five hundred (500) feet thereof. Said plan shall also indicate the location of surface and subsurface rock and the seasonal high groundwater table.
 * * *
6. Indicate the existing and proposed drainage of the permit premises including drainage provisions during the excavation of filling phases, as well as an erosion control plan.
 * * * CT Page 10599
i. Additionally, all applications should include a water and erosion control plan. All plans should show the following: Routes water will follow both during and after work is completed; temporary measures, both mechanical and vegetative, for erosion control; measures planned for keeping sediment on the site; vegetative treatment to include lime, fertilizer, seed mixture and mulching; and any permanent mechanical measures needed to control water runoff and thus erosion and sediment." Coventry Zoning Regs., §§ 3.13.4.a.3, 3.13.4.a.6, 3.13.4.i. Section 3.13.5 of the zoning regulations provides that "[t]he applicant shall submit a final plan which will indicate the final land configuration of the parcel. An order to encourage land aesthetics, final slopes may consist of variations of 2:1, 3:1 and 4:1 ratios. Said plan, subject to approval of the Commission, shall also include reforestation and seeding. A written statement shall accompany said plan indicating: a) Proposed final condition of the land and its usefulness for development based on the remaining natural resource conditions; and b) Alternative land uses such as ponds, parks, and other amenities."
Again, the plaintiffs provide the court with only a vague and conclusory claim that the commission violated these sections of the zoning, regulations by failing to require the applicants to submit the pertinent information. Although not discussed in the trial brief, a review of the record, specifically the transcript of the public hearing and a letter from the plaintiffs to the commission, reveals that the plaintiffs had numerous specific concerns regarding the application and the alleged lack of information required under the cited portions of the zoning regulations. The plaintiffs claimed that the application was deficient because: (1) the plans failed to indicate contour lines as they existed at the time of the application in violation of § 3.13.4.a.3; (2) the plans failed to provide drainage information in violation of § 3.13.4.a.6; (3) the plans failed to completely address erosion and sediment controls in violation of § 3.13.4.i; and (4) the application failed to indicate the function of the pond for purposes of determining the final land configuration in violation of § 3.13.5 of the Coventry zoning regulations. (ROR, Item 31, pp. 2-3)
The return of record includes the applicants' site plan. (ROR, Item 1). The site plan is dated January 18, 1994, with revision dates of July 15, 1994 and August 31, 1994, and is date stampeds received by the commission on December 30, 1997. The CT Page 10600 plan consists of three pages. The first and second pages are maps of the property at issue, apparently showing existing and proposed contour lines, boundary lines, easements, and other details of the plan. The third page consists in part of a narrative of the details of the erosion and sediment control plan, including the sequence of activities (i.e., phases of the plan), the seed bed site preparation, the seed selection and application, mulching, etc. The erosion and sediment control plan also shows technical drawings of other measures that are to be implemented to control erosion, including a hale bay dam, a silt fence, an anti-seepage collar, an emergency spillway and a riprap plunge pool.
A site plan "is a physical plan showing the layout and the design of the site of a proposed use. . . . It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses. . . . As used in General Statutes § 8-3 (g), a site plan is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use." (Citation omitted; internal quotation marks omitted.) Barberino Realty Development Corp. v. Planning Zoning Commission, 222 Conn. 607, 6131-14, 610 A.2d 1205 (1992)
While it is the court's function to determine whether the site plan and application meet the requirements of the regulations, it is not the court's function to analyze the adequacy of the technical compliance of a site plan under the circumstances of a particular application. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [must] decide whether the [commission] correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the [commission] is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) Double I Ltd.Partnership v. Plan Zoning Commission, 218 Conn. 65, 72,588 A.2d 624 (1991). In addition, "[c]ourts are not to substitute their judgment for that of the [commission] . . . and decisions CT Page 10601 of local [zoning agencies] will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the [commission] to determine whether it has acted fairly or with proper motives or upon valid reasons. Raczkowskiv. Zoning Commission, supra, 53 Conn. App. 640, quoting Bloom v.Zoning Board of Appeals, supra, 233 Conn. 206. Moreover, "the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency."Newtown v. Keeney, 234 Conn. 312, 319, 661 A.2d 589 (1995)
The plaintiffs apparently claim that the technical markings of the contour lines on the site plan map were incorrect because they did not represent the contours that existed at the time of the application, in violation of § 3.13.4.a.3 of the Coventry zoning regulations. The plaintiffs cite no provisions of the regulations or other authority indicating how current a site plan map must be or when it should be updated for the purpose of renewal or reapplication to continue the original use. Moreover, the question of whether the site plan map appropriately represents the state of the property at the time of the application is a question of fact to be determined by the commission, and the court will not disturb the commission's judgment as to the technical adequacy of the markings on a site plan map.
In addition, the plaintiffs apparently do not challenge the propriety of the site plan on the basis that the map fails to include information concerning drainage under § 3.13.4.a.6 or erosion and sediment controls under § 3.13.4.i; rather, the plaintiffs claim that the information provided is insufficient. A review of the site plan reveals that the plan provides drainage information and an erosion and sediment control plan. Thus, the plan meets the requirements of §§ 3.13.4.a.6 and 3.13.4.i of the Coventry zoning regulations. The court will not substitute its judgment for that of the commission regarding the adequacy of the information provided. Accordingly, the plaintiffs' claims under these sections of the zoning regulations cannot be sustained.
It also appears that the plaintiffs' claim at the public hearing under § 3.13.5 was not that the plans failed to include a final land configuration of the parcel, but that there was no information on the function of the pond. The regulations do not specifically require an applicant for a special permit to provide information on the function of a pond in the site plan. It was CT Page 10602 within the commission's judgment to consider the function of the pond and whether such a function is compatible with the final land configuration, and the court may not substitute its judgment for that of the commission on this issue.
The plaintiffs additionally claim that the application violated §§ 3.13.4.b, 3.13.6 and 3.13.10 of the Coventry zoning regulations. Section 3.13.4.b provides that for an excavation special permit," [n]o stone crusher or other machinery not required for an actual removal of the material shall be used. A list of the number and types of machinery to be used on the premises and for hauling shall be submitted to the Commission." Section 3.13.6 of the zoning regulations provides: "The applicant shall submit the haul pattern for the operations, which shall be approved or modified and approved by the Commission. If such pattern includes the use of any bridge, the applicant shall submit in writing the capacity of such bridge(s) and the capacities of the trucks and other equipment to be used. If such haul pattern creates traffic safety hazards or a nuisance for residential property in the area, and cannot be modified to remove such conditions, the Commission may deny the application." Section 3.13.10 provides, in pertinent part: "Before a permit or renewal is granted, the owner shall post a bond . . . with the Treasurer of the Town of Coventry. The amount of the bond shall be determined by the Commission and be sufficient to insure full and faithful compliance with the provisions of these Regulations. . . . The amount of the bond shall be reviewed by the Town Engineer and/or the Soil Conservation Service of the United States Department of Agriculture. Bonds shall be approved by Town Attorney on forms approved by Town of Coventry.
The transcript of the public hearing and the letter from the plaintiffs to the commission indicate that the plaintiffs claimed that (1) the applicants failed to submit a list of the number and types of machinery to be used on the premises and for hauling in violation of § 3.13.4.b; (2) the plans failed to provide information regarding a haul pattern in violation of § 3.13.6; and (3) the commission failed to require the posting of a bond prior to the public hearing and approval of the application in violation of § 3.13.10. (ROR, Item 31, pp. 3-4).
The concerns of the plaintiffs regarding their claims that certain requisite information did not accompany the special permit application were fully discussed at the public hearing by Steven Pollansky, and were fully addressed by the commission. CT Page 10603 (ROR, Item 38, pp. 7-48). At the public hearing the commission questioned the applicants about the number and types of machinery that were going to be used on the premises. (ROR, Item 38, p. 27). The applicants indicated that three pieces of machinery would be stored on the property — a D9C Caterpillar bulldozer, a four-yard Michigan loader and a three-yard excavator. (ROR, Item 38, p. 27). In addition, the commission questioned the applicants regarding the haul pattern. The applicants indicated that they deliver gravel on demand to their customers' locations, and therefore there can be no defined haul pattern. (ROR, Item 38, pp. 27-28). The plaintiffs provided the commission with no opposing testimony or evidence regarding the machinery and haul pattern.
Although the commission apparently did not receive the information addressed in §§ 3.13.4.b and 3.13.6 in writing with the application, the commission heard testimony regarding such information at the public hearing. In addition; apparently in response to concerns of the plaintiffs, the commission attached conditions to the approval of the application requiring the applicants to submit a written list of equipment to be used or stored on the property and to submit in writing a haul pattern. (ROR, Item 38, p. 48; ROR, Item 39: Written Notice of Commission Decision). The fact that the application did not include this information in writing prior to the public hearing is not critical because the commission had before it the pertinent information, adduced at the public hearing, in passing upon the special permit application. Moreover, the plaintiffs apparently did not contest the substance of the information regarding the machinery and haul pattern. The purpose for including the details of the machinery and haul pattern for the proposed use under §§ 3.13.4.b and 3.13.6 is to provide the commission with all the pertinent information in determining the propriety of the application. In the present case, the fact that the information was not presented in writing prior to the public hearing does not undermine this purpose since the commission received and reviewed the information at the public hearing. The plaintiffs have failed to demonstrate how the commission's action was illegal, arbitrary or in abuse of discretion. Accordingly, the plaintiffs' claims under §§ 3.13.4.b and 3.13.6 cannot be sustained.
Similarly, the fact that the applicants did not post a bond prior to the commission's decision to grant the special permit application does not invalidate the commission's action. The commission discussed the posting of the bond at the public CT Page 10604 hearing. (ROR, Item 38, pp. 30-31, 41-42, 46). As a condition to the granting of the application, the applicants were required to post an adequate bond "to cover the restoration as per Section 3.13.10 of the zoning regulations." (ROR, Item 39). Even though the language of § 3.13.10 of the Coventry zoning regulations provides that "[b] efore a permit or renewal is granted, the owner shall post a bond," such language concerning the timing of the posting of the bond is merely directory and not mandatory.
"In construing [zoning] regulations, the general rules of statutory construction apply." Smith v. Zoning Board of Appeals,227 Conn. 71, 89, 629 A.2d 1089 (1993), cert. denied,510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540 (1994). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. . . . A reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision." (Citations omitted; internal quotation marks omitted.) Lauer v. Zoning Commission, 246 Conn. 251, 262,716 A.2d 840 (1998).
Section 13.13.10 does not include language expressly invalidating the commission's action for failure to require the posting of a bond prior to the commission's decision to grant an application. Moreover, the prescribed mode of action in § 3.13.10 us certainly not the essence of the thing to be accomplished. The language of the timing portion of the provision is stated in affirmative terms, unaccompanied by negative words and is designed to secure order and, presumably, to ensure that the bonding will be posted. The commission's attachment of the condition requiring the posting of the bond adequately meets the purpose of the provision by ensuring such posting. Moreover, in reviewing the conclusions of a zoning authority, "[c]ourts must be scrupulous not to hamper the legitimate activities of civic CT Page 10605 administrative boards by indulging in a microscopic search for technical infirmities in their actions." Raczkowski v. ZoningCommission, supra, 53 Conn. App. 640, quoting Samperi v. InlandWetlands Agency, 226 Conn. 579, 596, 628 A.2d 1286 (1993). Accordingly, the plaintiffs' claim under § 3.13.10 cannot be sustained.
The plaintiffs cite to § 3.22.2.k of the Coventry zoning regulations in support of their final claim of error. Section 3.22.2.k provides that the permit must comply with "site development principles" for the preservation of top soil in developing areas. At the public hearing the plaintiffs argued that most of the topsoil had been removed from the applicants' site, and that they were concerned that there would not be enough top soil to restore the surrounding areas after completion of the project. (ROR, Item 38, p. 12; ROR, Item 31, p. 4)
Section 3.22.2.k provides: "Unless approved by theCommission, top soil shall not be removed from developing areas except for sites of structures or man-made improvements. The top soil from areas intended for such improvements shall be redistributed within the boundaries of the subject site to facilitate the provision of a suitable base for seeding and plantings. As necessary, additional top soil shall be brought to the site. Soil and other material shall not be temporarily or permanently stored in locations which would cause suffocation of root systems of trees to be preserved." (Emphasis added.) Coventry Zoning Regs., § 3.22.2. k.
It is difficult to comprehend the plaintiffs' claim under § 1322.2.k considering that the section allows the removal of top soil upon approval of the commission. In addition, the plaintiffs did not argue at the public hearing that the application was defective because it violated § 3.22.2.k; rather, the plaintiffs argued that they were "concerned that there will not be enough [top soil] to restore the surrounding areas adequately after completion of the project as proposed." (ROR, Item 38, p. 12; ROR, Item 31, p. 4). A review of the record reveals, however, that the commission adequately considered the alleged lack of top soil on the property. (ROR, Item 38, pp. 30-31). In fact, the commission indicated that the reason for the posting of the bond was to secure the ultimate restoration of the property, and adequate top soil at the time of restoration would be ensured by the bond. (ROR, Item 38, p. 30. Because the court may not substitute its judgment for that of the commission, and because CT Page 10606 the commission reasonably and fairly exercised its honest judgment as to the factual questions surrounding the adequacy of the top soil after a full hearing, the court may not disturb the commission's decision on the basis that it violated § 3.22.2.k due to inadequate top soil on the property. See Raczkowski v.Zoning Commission, supra, 53 Conn. App. 640.
 CONCLUSION
The court is mindful that the Pollanskys are concerned with the use of the land adjoining them and that this appeal is a formal legal expression of that concern.
Nevertheless, the court must conclude, that based on the foregoing and the fact that the plaintiffs have not sustained their burden of proof in attempting to invalidate the action of the defendant Zoning Commission, that the instant appeal must and is hereby dismissed.
Stengel, J.