[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In the first count of its amended complaint, plaintiff appeals from the decision of March 9, 2001 of defendant Arthur J. Rocque, Jr., Commissioner of the State of Connecticut Department of Environmental Protection approving a Remedial Action Plan for the remediation of polluted soil and groundwater located at the Adriaen's Landing site in Hartford, Connecticut, granting two new source review air permits, and general permits to construct and operate diesel generators for emergency power and to discharge ground water and storm water at the Adriaen's Landing project.
In the second count plaintiff seeks a declaratory judgment that the 1999 statute relating to Adriaen's Landing, §§ 32-65, et. seq., is unconstitutional. The court has bifurcated the case and will first decide plaintiff's first count, leaving the second count for another day.
The plaintiff Organized North Easterners and Clay Hill and North End, Inc. (hereinafter "One/Chane") is a membership organization with a board of directors and several hundred members within the Clay-Arsenal and northeast neighborhoods of the city of Hartford. Its corporate mission is to act as a grass roots, community organization that mobilizes members and residents of its constituent neighborhoods to respond to socio-economic-political issues in the city of Hartford that affect their interests.
The defendant Arthur J. Rocque, Jr. is the Commissioner of the State Department of Environmental Protection (hereinafter "Commissioner" or "DEP") and charged by Connecticut General Statutes § 32-664 (a), (j) to (l) inclusive, with review of the environmental impact evaluations, required by §§ 22a-1a to 22a-1c inclusive, and granting or denying any licenses, permits or approvals in connection with the Adriaen's Landing project.
The defendant Office of Policy and Management (hereinafter "OPM"), is an agency of the state specifically charged by § 32-655 (a)(9) with the responsibility of coordinating the overall projects of Adriaens's Landing and Rentsehler's Field. OPM or its agents prepared the environmental impact evaluation and the Remedial Action Plan for Adriaen's Landing and was the applicant with respect to the permits granted by the Commissioner.
The defendant, City of Hartford is a municipal corporation and CT Page 7460 political subdivision of the state of Connecticut, and the defendant Capital City Economic Development Authority (hereinafter "CCEDA") is the political subdivision of the state of Connecticut, created by § 32-601, for the purpose of overseeing the development of the Adriaen's Landing project as an agent of OPM.
The facts are as follows:
On January 29, 2001 all of the defendants jointly published a notice in the Hartford Courant for a public hearing regarding the Adriaen's Landing project (hereinafter "Project") to include the following matters:
1. The state environmental impact evaluation (EIE) and the federal environmental impact statement (EIS);
2. The remedial action plan;
3. The DEP permit application relating to air permits;
4. The proposal to construct and engineer control of polluted soils on the premises.
The notice further provided, "The public hearing will be held on Monday, February 5, 2001 at 6:00 p.m. in the auditorium of the Betances School, 42 Charter Oak Avenue, Hartford. If necessary the hearing will continue to Wednesday, February 7, 2001 at 6:00 p.m. in the auditorium of the Bentances School, 42 Charter Oak Avenue, Hartford." The notice also provided that public review and comments on the EIE would conclude at 4:00 p.m., the second day following the close of the public hearing.
The public hearing on February 5 was canceled due to a heavy snowstorm. The plaintiff learned of the cancellation by calling CCEDA and being informed that the hearing would occur on February 7. The defendants placed a sign on the door of the school to the effect the hearing would be held on February 7. On February 6 the defendants jointly caused a notice to be published in the Hartford Courant stating that the public hearing previously scheduled and noticed for February 5 had been rescheduled and would take place in its entirety on February 7. The evidence adduced at the trial revealed that the city streets of Hartford were unplowed on February 6 and that the Hartford Courant for that day was not delivered to many residents of the northend of Hartford. The hearing did go forward on February 7 and the plaintiff's representatives made a presentation, mainly contending that the traffic analysis in the EIE was inadequate and that the protection against hazardous waste at the site in the Remedial Action Plan was also inadequate. CT Page 7461
On March 8, 2001 Elsie Patton, DEP Hearing Officer issued a proposed final decision approving the Remedial Action Plan. On March 9, 2001 DEP Hearing Officer Edward C. Parker issued a report recommending approval of two air, new source review permits, general permits to construct and operate emergency power generators, and general permits to discharge groundwater and storm water. On March 9, 2001 the Commissioner of the Department of Environmental Protection rendered a decision approving the Remedial Action Plan, granting the two air, new source review permits, general permits to construct and operate diesel generators as emergency engines, and certificates of registration to discharge waste water to the sanitary sewer and ground and storm water pursuant to a storm water management plan. In its first count, the plaintiff has appealed that decision of the Commissioner of the Department of Environmental Protection.
This case requires an interpretation of the statutes passed by the legislator in 1999 to foster the development of Adriaen's Landing and Rentsehler's Field, §§ 32-650, et. seq., and hereinafter sometimes referred to as the Enabling Act.
At the outset this court must deal with § 32-664 (g) that restricts the time limit for this court to render a decision on an administrative appeal arising from those projects. That subsection requires parties to appeal from an administrative decision involving those projects within ten days of the mailing of the administrative agency's final decision (in contrast to forty-five days in § 4-183 (c)), requires the agency to file the record of the administrative proceeding within ten days of the service of the appeal, (in contrast to thirty days in § 4-183 (g)), and further provides:
 "Appeals to the Superior Court shall each be privileged matters and shall be heard as soon after the return date as practicable. A court shall render its decision not later than twenty-one days after the date that the entire record with the transcript is filed with the court by the commissioner who rendered the decision."
In this case the plaintiff appealed the March 9, 2001 decision of the Commissioner of Department of Environment Protection on March 19, 2001, the record was filed in the court on April 3, 2001, the parties filed briefs until April 12, 2001. The court started to hear evidence on aggrievement on April 17 and continued the trial on April 18, 19, 20, finally concluding it on April 24, the last day of the 21 days for the court to render a decision pursuant to § 32-664 (g). The court allowed the parties to file briefs after the evidence until May 11, 2001 CT Page 7462 and heard closing argument on May 18, 2001.
This court must decide whether or not that the provision of § 32-664
(g), requiring the court to render a decision within 21 days of the filing of the record, is unconstitutional as a violation of the separation of powers doctrine.
Initially, the court recognizes the principle that a statute carries every presumption in its favor of its constitutionality and cannot be declared unconstitutional unless so established beyond a reasonable doubt. State v. Breton, 212 Conn. 258, 269 (1989)
The doctrine of separation of powers serves the dual function of limiting the exercise of power within each branch of government, while ensuring the independent exercise of that power. Massameno v. StatewideGrievance Committee, 234 Conn. 534, 552, 553 (1995). The standard to be applied is stated in Massameno as follows:
 "Consequently, we have stated that in deciding whether one branch's actions violate the constitutional mandate of the separation of powers doctrine, the court will consider if the actions constitute: (1) an assumption of power that lies exclusively under the control of another branch; or (2) a significant interference with the orderly conduct of the essential functions of another branch."
Specifically, a statute violates a constitutional mandate for separate judicial magistery only if "`it represents an effort by the legislature to exercise a power which lies exclusively under the control of the court' . . . or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions." Heslin v.Connecticut Law Clinic of Trantolo and Trantolo, 190 Conn. 510, 522
(1983). See also Bartholomew v. Chweizer, 217 Conn. 671, 676 (1991)
As stated by Justice Marshall in Marbury v. Madison, 5 U.S. (Cranch's Report) 137, 177 (1801), "It is emphatically the province and the duty of the judicial department to say what the law it."
Stating it less elegantly, the function of a court is to decide cases. This requires that a court consider the evidence, read briefs, hear oral arguments, research the law independently, "deliberate and . . . reach a thoughtful, reasoned conclusion." Frank v. Streeter, 192 Conn. 601, 605
(1984). That power lies "exclusively under the control of the court."Heslin, 190 Conn. at 522. CT Page 7463
Even if in this case the court began its process of deciding this complex litigation after the parties filed their briefs on April 12, 2001, it would be "a significant interference with the orderly conduct of the Superior Court's judicial function" (Id.) for the legislature to require this court to render a decision by April 24, 2001. It would be an even more significant interference with the court's judicial function to render a decision on the day the evidence was completed on April 24, 2001. Moreover, the orderly conduct of a trial requires the court give the parties the right to file briefs on the issue of aggrievement and to argue that issue and the merits of the case.
It is one thing for the legislature to require judges to render a judgment not later than 120 days from the completion date of a civil trial as in § 51-183b. That statute has been interpreted as defining the jurisdiction of the courts, which the legislature has the power to do, Sanchez v. Prestia, 29 Conn. App. 157, 161 (1992), or enacted for the purpose of reducing delays in the trial courts, Lauer v. Zoning Commissionof Redding, 246 Conn. 251, 257 (1998). It is an entirely different thing for the legislature to so severely restrict the time within a court must decide a case as to prevent it from performing its essential functions of hearing evidence, considering briefs and oral argument of counsel, deliberating, and coming to "a reasoned and thoughtful conclusion." Frankv. Streeter, supra at 605.
Thus the court concludes that, the provision of § 32-664 (g) requiring the court to render a decision within twenty-one days of the filing of the administrative record is unconstitutional as a violation of the doctrine of separation of powers, and, as a result, does not bar this court from issuing its decision after that deadline.
The courts must now turn to the issue of aggrievement. Clearly, the plaintiff must establish it is aggrieved by the administrative agency decision appealed from in order for this court to have jurisdiction.Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493 (1978)
The test of aggrievement encompasses a well settled two-fold determination: "First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." Nader v. Altermat, 166 Conn. 43, 51 (1974).
Plaintiff here claims representational aggrievement in accordance with the grounds that our Supreme Court has approved for such a form of CT Page 7464 aggrievement; namely, that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. Association of Not-for-Profit Providers for theAging v. Department of Social Services, 244 Conn. 378, 386 (1998). The court finds that the second and third prongs of the test are met: namely, plaintiff's purpose of seeking environmental justice for the areas of Hartford it represents comports with its organizational purpose, and the claims asserted and the relief requested in this action do not require that the participation of its individual members in the lawsuit.
Whether or not its individual members have standing to sue in their own right depends on the nature of their claims of injury and whether or not those claims relate to the decision they have the right here to appeal from. The plaintiff's claim of injury is inadequacy in the traffic analysis contained in the EIE and inadequacy of dealing with hazardous waste in the Remedial Action Plan.
As for traffic, the evidence was that traffic on Albany Avenue and North Main Street, Hartford is now heavy and particularly on Sundays cars are double parked by people attending churches on those streets. Individual members of the plaintiff live in the vicinity of those streets and are ministers of churches in that area. Plaintiff claims the traffic analysis in the EIE is deficient in failing to take into account the additional traffic on those streets that will be generated by the project. However, our courts have long held that generalized fear about increased traffic resulting from a zone change do not establish that a resident's property, personal or legal rights are specifically injured so as to constitute aggrievement. Tucker v. Zoning Board of Appeals,151 Conn. 510, 516 (1964).
Plaintiff claims, however, in its brief, "The interest raised by members of the plaintiff association go beyond mere convenience issues and strike at the survival of a significant homeless population, mental health issues, access to the church as a central institution of cultural homongeny and access to residence and places of business." These claims go to the concerns of the general community at large and do not create standing in individual members of the plaintiff's organization.
As to the claimed inadequacy of the Remedial Action Plan in dealing with hazardous waste at the project site, plaintiff claims that the Enabling Act, specifically at § 32-656, expressly states that preference will be given to hiring qualified minority contractors for work CT Page 7465 on the project and that the demographics of Hartford's north end "make the likelihood statistically significant that construction workers will be hired from neighborhoods and include specific persons represented by ONE/CHANE." It also points out that negotiations are underway for $10,000,000.00 to be set aside for minority contractors.
Plaintiff's claim that it represents people in the community who may be injured by the decision appealed from is not sufficient to establish representational aggrievement. It must show the possibility of injury to its members. The only person who testified on that issue was a member of the plaintiff who stated he was an officer of a Bridgeport minority construction company which anticipates getting a contract in the Adriaen's Landing project but had not yet submitted a bid. This evidence is insufficient to establish the possibility of injury to plaintiff's members.
In Friends of Animals, Inc. v. Arthur Rocque, Commissioner ofDepartment of Environmental Protection, 28 Conn.L.Rptr., 9, 309 (January 8, 2001); Superior Court, J.D. Hartford, No. CV 00-0801973 (October 5, 2000, Schuman, J.), relied upon by plaintiff in this case, the plaintiff in Friends of Animals, Inc., an association of advocates of non-legal and non-injurious methods of trapping trapping, sought to enjoin the DEP's fall 2000 program permitting the trapping of fur bearing animals on state owned land. The strategy of the plaintiff was to prevent killing fur bearing animals by obtaining as many trapping permits as possible with the intention of using them for non-legal methods of disposing of the animals, and thereby preventing the issuance of permits to trappers who would use them to kill animals. The court noted at28 Conn.L.Rptr. 9, p. 311, footnote 2, that only the members of the association who had applied for permits gave the association standing to sue, and the member who had not applied did not confer standing on the plaintiff.
In the case before this court, where no members of the plaintiff have yet bid for a contract on the Adriaen's Landing project nor been granted one, and where, although people in Hartford's northend are statistically likely to be hired on the project, plaintiff has not shown its members may be hired, the court finds the plaintiff has not met the test of representational aggrievement, as it has not shown that any of its members are likely to be specifically injured.
More significant is the question whether or not the aggrievement claimed by the plaintiff, namely the inadequacy of the traffic analysis in the EIE and the inadequacy of dealing with hazardous waste in the Remedial Action Plan, relate to the final decision from which the plaintiff has the right to appeal. CT Page 7466
The plaintiff argues that it has the right, pursuant to § 32-664
(g) to appeal "[a]ny administrative action taken by the commissioner in connection with the overall project."
In this regard plaintiff points to § 32-664 (j) to the effect that the Commissioner is required to hold a public hearing on the EIE, to § 32-664 (1) to the effect that the Commissioner shall take into consideration all public comments received in connection with the EIE, and "the Commissioner of Environmental Protection shall adopt a master administrative process for any license, permits or approval for administrative actions which otherwise have required a public hearing pursuant to statute or regulation, which. . . . shall include a single public hearing for the [Adriaen's Landing Project] . . ." Plaintiff claims this statutory scheme links the EIE, the Remedial Action Plan, and the approval of permits, so that plaintiff has the right to appeal the administrative action taken by the Commissioner with respect to the EIE, the Remedial Action Plan and the six permits issued.
This court disagrees. The Enabling Act did not jettison § 4-183; rather, it specifically incorporated it by reference. It provides, "Any administrative action taken by any commissioner in connection with the overall project may be appealed by an aggrieved party to the superior court . . . in accordance with the provisions of § 4-183." (underlining added). Moreover, the purpose of subsection (g) of §32-664 is clearly not to expand rights to appeal administrative agency decisions involving the Adriaen's Landing project, but, rather, to compress the whole process of administrative deliberations by imposing time limitations stricter than under the Uniform Administrative Procedures Act.
Under § 4-183 an appeal may be taken only from the "final decision of an administrative agency." § 4-166 (3) provides: "`final decision' means (a) the agency determination in a contested case. . . ." § 4-166
(2) provides: ""contested case' means a proceeding . . . in which the legal rights or privilege of a party are required by statute to be determined by the agency after an opportunity for hearing or in which a hearing is in fact held . . ."
In this case a hearing was held on the issues of the EIE, the Remediation Action Plan, new source air permits and engineer control of pollution soils on the premises. That, however, does not make all of those issues subjects of a contested case. The test is that the agency must be required by statute to determine a party's legal rights, privilege and duties in a hearing. In Summit Hydro Power Partnership v. Commissioner ofEnvironmental Protection, 226 Conn. 792 (1993) a hearing was held on the CT Page 7467 application of the plaintiff for certification that a hydroelectric plant complied with state water quality standards. Nevertheless, the Supreme Court held (at p. 802) "Even if, however, the plaintiff had a legal right or privilege to § 401 certification, and even if that right or privilege was denied in a proceeding before the Commissioner, the plaintiff does not have the right to appeal unless the Commissioner wasstatutorily required to determine the plaintiff's legal right or privilege to § 401 certification in a hearing or after the opportunity for a hearing. . . .
"If the plaintiff's rights or privileges were not statutorily required to be determined by the agency in a hearing or after an opportunity for a hearing, a `contested case' would not exist and the plaintiff would have no right to appeal pursuant to § 4-183 (a)." (italics as in original)
Here, although the Enabling Act at § 32-664 (j) requires a hearing on EIE, the Act at § 32-664 (1) only requires that the Commissioner to take the comments at the hearing "into consideration" in exercising jurisdiction over permits or approvals with respect to the project.
The plaintiff argues that because the Commissioner must consider EIE in the determination of the application for air permits, that are conceded by the defendants to be the subject of a contested case, the approval of the EIE itself becomes a contested case. This court disagrees. Taking EIE into consideration does not determine anybody's legal rights or privileges; issuing the permits does and plaintiff is not claiming aggrievement as to those permits.
Moreover, the decision here appealed from does not even approve the EIE, so the claim of aggrievement based on the traffic analysis in EIE has no basis in this case. At oral argument plaintiff's lawyer conceded that claim was "attenuated."
As for the Remedial Action Plan, no statute requires that it be approved in a hearing. Thus, under the authority of Summit Hydro PowerPartnership v. Commissioner of Environmental Protection, supra, its approval does not give rise to a contested case. Even an agency regulation requiring a hearing, without a corresponding statutory requirement for same, will not constitute a contested case proceeding from which a UAPA-type appeal can be perfected. Lewis v. Connecticut Gaming PolicyBoard, 224 Conn. 693 (1993). However, the Enabling Act is a little broader than the UAPA, in that while § 4-166 (2) provides that a contested case means a proceeding in which the legal rights, duties or privilege of a party are required by statute to be determined by an agency, § 32-664 (1) provides that the Commissioner shall adopt a CT Page 7468 master administrative process for any permits or approvals "which would otherwise have required a public hearing pursuant to statute orregulation. . . ." The Department of Environmental Protection has issued regulation § 22a-133 (k-l) that provides: "If the Commissioner determines that there is substantial public interest in any remediation proposed. . . . he may hold a public hearing on such proposed remediation, and he shall hold the hearing upon receipt of a petition signed by 25 or more persons." Since the evidence in this case does not show that such a petition was filed, the regulatory provision for holding the hearing is permissive. Nor does the regulation require the Commissioner to determine the rights or privileges of anyone in the hearing. Consequently, it does not elevate the approval of the Remediation Action Plan to the status of a contested case.
Thus, plaintiff has failed to connect its claims of aggrievement to a case it has a right to appeal under § 4-183.
Consequently, the court concludes that the plaintiff has not proven aggrievement on the basis of its claims relating to traffic or hazardous waste either as a matter of fact, or of law and this case must be dismissed on the grounds of the court's lack of jurisdiction.
However, because the determination of lack of aggrievement is a close call, particularly when the court is construing a new statute for the first time, and because the court could on appeal be proven wrong, the court will determine the merits of plaintiff's appeal in order to expedite the resolution of this case in accordance with the spirit of the Enabling Act.
Plaintiff invokes § 32-664 (h)(3) to the effect that its appeal should be sustained on the grounds that its substantial rights have been materially prejudiced because the Commissioner's decision was "made upon unlawful procedure."
Specifically, the plaintiff claims the notice given in this case was defective and does not meet the standard of fairness required by law.
Section 32-664 (e) requires that legal notice of any hearing regarding all or any part of the overall project shall be published in a newspaper having general circulation in an area which includes the municipality in which the particular part of the overall project is proposed to be built "not more than ten nor less than five days in advance of such hearing." The notice published on January 29, 2001 in the Hartford Courant stated that the hearing will be held "on Monday February 5, 2001 at 6:00 in the auditorium of the Betances School . . . If necessary the hearing will be continued to Wednesday February 7, 2001 at 6:00 in the auditorium of the CT Page 7469 Betances School . . ." The plaintiff contends that the notice is confusing in that it specified that the public hearing would be held on February 5, 2001 and if necessary, be continued until February 7, 2001, while in fact, because of the snowstorm of February 5, 2001, the meeting actuallycommenced February 7, 2001.[1]
The purpose of publishing notices to the general public by means of legal advertisements is to notify as much of the population as possible of the public hearing and the contemplated action to be taken at it.Schwartz v. Hamden, 168 Conn. 8 (1975). In the absence of newspaper publication, persons with an interest in the subject of the meeting would have no way of learning of it. Consequently, failure to provide such notice deprives the administrative tribunal of subject matter jurisdiction "even when the complaining party appeared at the public hearing since the legislative intent to notify the public constructively would otherwise be frustrated." Lauer v. Zoning Commissioner,220 Conn. 445, 462 (1991)
The standard in determining whether or not due public notice has been given is whether or not it apprizes interested persons sufficiently to prepare intelligently for the hearing in order to produce relevant evidence and to cross-examine opposing witnesses. Grimes v. ConservationCommission, 243 Conn. 266, 274 (1997). The standard is an objective one — not whether or not the plaintiff's people, as some of them testified, were confused by the notice as to the public hearing starting on February 7, 2001, but whether or not a reasonable person would be confused by the notice published in this case. Slagle v. Zoning Board of Appeals,144 Conn. 690, 694 (1957)
As stated in Planning Zoning Commission v. Gall, 9 Conn. App. 538,545 (1987), "The content of the notice requirement is sufficient "if it gives the average reader reasonable warning the land in which he has an interest may be affected . . .'"
Here the notice provided that the public hearing would be held on February 6, 2001 and "if necessary" be continued to February 7, 2001. A snowstorm of February 5, 2001 required the cancellation of the February 5, 2001 meeting and necessitated that the meeting be held on February 7, 2001. The average person would so interpret the notice and expect the meeting to go forward on February 7, 2001.
Plaintiff's play on words of "commence" and "continue" is too sophistic. Notice of a public hearing need not meet a standard of "exactitude", Wells v. East Windsor, 185 Conn. 556, 559 (1981), as long its meaning is clear by the use of common sense. CT Page 7470
Apparently the plaintiff is arguing that if the hearing officer had opened the meeting on February 5, 2001 to an empty chamber and then continued it to February 7, 2001, the same constructive notice it now claims is defective would be adequate. Such a position fails the test of common sense. Moreover, on the night of February 5, 2001 notices were placed on the door of the school informing the public that the hearing would occur on February 7, 2001, having the practical effect of opening the meeting and continuing it until February 7, 2001.
The court concludes the newspaper notice of January 29, 2001 "fairly and sufficiently" apprized the public of the February 7, 2001 meeting.Kleinsmith v. Planning Zoning Commission, 157 Conn. 303, 310 (1968)
Finally, the record reveals that the plaintiff never asserted this claim of defective notice at the public hearing. Its spokesman claimed some confusion over a review of the environmental impact statement, but not over the notice about the February 7 hearing.
Our law is clear that failure to raise an issue before an administrative agency and attempting to assert it for the first time in an appeal to the Superior Court constitutes a failure to exhaust administrative remedies and requires dismissal of the appeal. Burnham v.Administrator, 184 Conn. 317, 323 (1981) The reasons for the rule is that first, "the reviewing court will have the benefit of the agency's findings and conclusions, "and second "the administrative agency may be able to resolve the issue, making judicial review unnecessary." FishUnlimited v. Northeast Utilities Service Co., 254 Conn. 1, 12, 13 (2000)
The court has dealt at length with all of plaintiff's claims out of respect for the plaintiff as a worthy community organization dedicated to promoting environmental justice for the people in Hartford whom it represents. But in the final analysis its claims are without merit. Thus, the court concludes that the plaintiff has failed to establish aggrievement or, in the alternative, if the court is wrong in that conclusion, the plaintiff has failed to establish the Commissioner's decision was made on unlawful procedure.
Consequently, the first count of plaintiff's amended complaint, appealing the Commissioner's decision of March 9, 2001, is dismissed for lack of jurisdiction, or, alternatively, dismissed on its merits.
Satter, J.T.R.